898 So.2d 1147 (2005)
WEST ORANGE LUMBER COMPANY, INC., Appellant,
v.
INDIANA LUMBERMENS MUTUAL INSURANCE COMPANY, et al., Appellees.
No. 5D04-1429.
District Court of Appeal of Florida, Fifth District.
April 1, 2005.
William N. Asma of William N. Asma, P.A., Winter Garden, for Appellant.
Sutton G. Hilyard, Jr., of Hilyard Bogan & Palmer, P.A., Orlando, for Appellee Indiana Lumbermens Mutual Insurance Company.
No Appearance for Appellee Bruce Evans, Ltd.
SHARP, W., J.
West Orange Lumber Company, Inc. (West Orange) appeals from a final declaratory judgment which determined that Indiana Lumbermens Mutual Insurance Company (Indiana) has no duty to defend nor to indemnify West Orange in a lawsuit filed against it by Bruce Evans, Ltd. (Evans). We affirm.
The record establishes that Forrec Construction (Evans' predecessor in interest) was a subcontractor under the general contractor, Centrex Rooney Construction Company, on a portion of the Animal Kingdom Lodge Resort project at Walt Disney World. Forrec obtained bids and limited quantities of cedar from West Orange, for completion of its subcontract. It requested "C" select or better cedar. West Orange submitted a quote, describing the product as "No Hole Select Cedar." Forrec's purchase orders described the quality of lumber as "C" select or better cedar, and West Orange delivered lumber, describing it as "No Hole Select Cedar."
In February of 2000, Disney questioned the grade of cedar being installed by Forrec. *1148 Centrex directed Forrec to stop the installation of all cedar siding, and take corrective action to provide a grade "C" or better cedar, as required by the owner's specifications. The cedar that had been installed was removed and replaced with a substitute product.
Evans filed a complaint against West Orange in September 2001, in which it described the damages suffered by it as a result of the failure to supply the proper grade of cedar siding:
21. Contrary to the representation made by WEST ORANGE, the cedar provided by WEST ORANGE and installed by FORREC did not meet the owner's specifications of "C" select or better.
22. As a result of WEST ORANGE's failure to provide the proper cedar, FORREC and EVANS suffered damages in replacing the cedar, which damages include, but are not limited to, increased material cost, labor costs, installation costs, subcontractor costs, transportation costs, additional overhead and legal fees which damages are in excess of $850,000.00 (emphasis added).
Although Indiana initially defended West Orange, it took the position in this declaratory proceeding that under its Commercial General Liability Policy and its Products/Completed Operations Liability Policy, it has no duty to defend or to indemnify West Orange for the damages alleged in the complaint filed by Evans. The general rule is that an insurance company's duty to defend an insured is determined solely from the allegations of the complaint against the insured. See National Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533 (Fla.1977); Insurance Co. of North America v. Whatley, 558 So.2d 120 (Fla. 5th DCA 1990).
The trial court concluded that with regard to the Commercial General Liability Policy, there were no allegations of property damages and that the dispute concerned a breach of contract, not a tort. Failure to supply a product specified in a contract is a business risk not covered by the liability policy issued by Indiana.
We agree. The purpose of comprehensive liability insurance coverage is to provide protection for personal injury or for property damage caused by the completed product, but not for the replacement and repair of that product or to insure construction or contract deficiencies. Aetna Cas. & Surety Co. of America v. Deluxe Systems, Inc., of Florida, 711 So.2d 1293 (Fla. 4th DCA 1998).
With regard to the Products/Completed Operations Liability Policy, an expert for Indiana testified in a deposition filed in this case that if "property damage" from the loss had been incurred, that policy would cover the damages because the loss could be characterized under the product-completed operations hazard, if the damage was a direct result of "your product." However, the allegations in the complaint show the owner or general contractor's property suffered no damage from the failure to supply the correct quality of lumber. The only damage alleged was the cost or expense to the vendor to remove the defective product and supply an acceptable substitute.
Furthermore, both policies provide the insurance does not apply to damage to impaired property:
This insurance does not apply to:
Damage to Impaired Property or Property Not Physically Injured
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

*1149 (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement on accordance with its terms.
Under both policies, "your product" means "any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by you." "Your work" is defined under both policies as:
a. Work or operations performed by you or on your behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations.
"Your work" includes:
a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work" ...
Finally, both policies contain exclusions which clearly exempt from coverage damages incurred by a vendor who supplies defective products and is required to remove and replace them with the specified products. The recall exclusion provides the insurance does not apply to:
Recall of Products, Work or Impaired Property
Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
(1) "Your product";
(2) "Your work"; or
(3) "Impaired property";
if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.
West Orange argues this exclusion should not be applicable because the cedar siding was not replaced because it was defective, deficient, inadequate or dangerous. However, the exclusion also encompasses deficient or inadequate materials. It, coupled with the exclusions above and the general policy that such liability policies do not to cover pure construction defects, absent damage to the property or person of third parties, is sufficient to exclude from coverage the situation involved in this case where, through error, mistake or negligence, a good product was sold and delivered and rejected for failure to meet contract specifications. Aetna Cas. & Surety Co. of America v. Deluxe Systems, Inc., of Florida.
AFFIRMED.
SAWAYA, C.J. and PLEUS, J., concur.