984 So.2d 1241 (2008)
AUTO-OWNERS INSURANCE COMPANY, Appellant,
v.
POZZI WINDOW COMPANY, et al., Appellees.
No. SC06-779.
Supreme Court of Florida.
June 12, 2008.
*1242 Denise V. Powers, Coral Gables, FL, for Appellant.
Edmund M. Kneisel and Richard E. Dolder of Kilpatrick Stockton, LLP, Atlanta, GA, for Appellees.
Ronald L. Kammer and Sina Bahadoran of Hinshaw and Culbertson, LLP, Miami, FL, on behalf of Mid-Continent Casualty Company; David K. Miller and Ginger L. Barry of Broad and Cassel, Tallahassee, FL, Keith Hetrick, Florida Home Builders Association, Tallahassee, FL, R. Hugh Lumpkin and Michael F. Huber of Ver Ploeg and Lumpkin, P.A., Miami, FL, on behalf of Florida Home Builders Association, National Association of Home Builders, Arvida/JMB Partners, L.P., Arvida Managers, Inc., Arvida/JMB Management, L.P., and Mercedes Home Corporation; Warren H. Husband of Metz, Husband, and Daughton, P.A., Tallahassee, FL, and Patrick J. Wielinski of Cokinos, Bosien, and Young, P.C., Arlington, TX, on behalf of Associated General Contractors of America, Florida A.G.C. Council, Inc., the Associated General Contractors of Greater Florida, Inc., South Florida Chapter of the Associated General Contractors, Florida East Coast Chapter of the Associated General Contractors of America, Inc., American Subcontractors Association, Inc., and American Subcontractors of Florida, Inc.; and Mark A. Boyle, Sr. of Fink and Boyle, P.A., Fort Myers, FL, on behalf of FHBF Partners, LLP, Aubuchon Homes, Inc., Camden Development, Inc., and Keenan, Hopkins, Schmidt and Stowell Contractors, Inc., As Amici Curiae.
*1243 PARIENTE, J.
The United States Court of Appeals for the Eleventh Circuit has certified the following question of Florida law that is determinative of a cause pending in that court and for which there appears to be no controlling precedent:
DOES A STANDARD FORM [COMMERCIAL] GENERAL LIABILITY POLICY WITH PRODUCT[S] COMPLETED OPERATIONS HAZARD COVERAGE, SUCH AS THE POLICIES DESCRIBED HERE, ISSUED TO A GENERAL CONTRACTOR, COVER THE GENERAL CONTRACTOR'S LIABILITY TO A THIRD PARTY FOR THE COSTS OF REPAIR OR REPLACEMENT OF DEFECTIVE WORK BY ITS SUBCONTRACTOR?
Pozzi Window Co. v. Auto-Owners Ins. Co., 446 F.3d 1178, 1188 (11th Cir.2006). We have jurisdiction. See art. V, § 3(b)(6), Fla. Const.
When the Eleventh Circuit certified the question, it did not have the benefit of our decision in United States Fire Insurance Co. v. J.S.U.B., Inc., 979 So.2d 871 (Fla. 2007), in which we held that a subcontractor's defective work can constitute an "occurrence" under a post-1986 standard form commercial general liability policy. In this case, the defective work relates to the repair or replacement of custom windows in a home. However, in its opinion, the Eleventh Circuit used the terms "defective installation" and "defective windows" interchangeably, even though the terms are not interchangeable for purposes of determining whether there is insurance coverage based on our decision in J.S.U.B. In fact, as we will explain more fully below, there is a critical distinction for purposes of insurance coverage depending on whether the "defective work" refers only to the defective installation of the custom windows or whether the windows themselves were also defective. Therefore, the answer to the certified question is dependent on this ultimate determination, which we are not in a position to make.

FACTS AND PROCEDURAL HISTORY
Coral Construction of South Florida, Inc., and Coral's president James J. Irby ("Builder") constructed a multimillion dollar house in Coconut Grove, Florida. The house included windows that were individually purchased by Mr. Perez ("Homeowner") from International Windows & Doors, Inc. ("Retailer"), manufactured by Pozzi Window Company ("Pozzi") and installed by a subcontractor, Brian Scott Builders, Inc. ("Subcontractor"). After moving into the house, the owner complained of water leakage around the windows. The Homeowner filed suit against Pozzi, the Retailer, the Builder, and the Subcontractor.
According to the Homeowner's complaint, the Builder urged him to purchase the Pozzi-manufactured windows from the Retailer, which in turn hired the Subcontractor to perform the installation. The Homeowner asserted that the windows were shipped directly to his residence, that he paid the Retailer directly for the windows, and that the windows "were defectively and deficiently designed and manufactured, and were installed improperly into [his] home." Pozzi filed a cross-claim against the Subcontractor alleging that the damages to the home were caused by the defective installation and not a result of any defect in the windows themselves.
Pozzi entered into a settlement with the Homeowner, agreeing to "remedy the defective *1244 installation of the windows."[1] Thereafter, Pozzi also settled with the Builder, and as the Builder's assignee, filed a lawsuit against the Builder's insurer, Auto-Owners Insurance Company ("Auto-Owners").
In its complaint, Pozzi alleged that Auto-Owners breached its insurance contract by denying coverage, acted in bad faith, and that Pozzi, as assignee of the Builder, was entitled to fees and costs incurred by the Builder in prosecuting this action. Pozzi claimed that the Homeowner purchased the windows and that the Subcontractor, under the supervision of the Builder, negligently installed the windows.[2] Pozzi also contended that the negligently installed windows leaked,
causing substantial water damage to the surrounding plaster and wood of the walls, floors, and ceiling of the Perez residence, as well as damage to the windows themselves. The damage caused by negligent installation and resulting water intrusion rendered the Pozzi windows unfit for use in the residence, requiring their replacement.
In its answer, Auto-Owners admitted that the Homeowner purchased the windows from the Retailer and that the Subcontractor alone installed the windows; however, Auto-Owners specifically denied Pozzi's allegations as to the defectiveness of the installation and that the installation caused damage to the windows themselves, which required their replacement. Auto-Owners also filed a counterclaim seeking a determination that it had no duty to defend the Builder and that there was no coverage for the claims asserted because defective work performed by the Subcontractor was excluded under the policies.
Pursuant to the policies, Auto-Owners had paid the Homeowner for personal property damage caused by the leaking windows, but refused to provide coverage for the cost of repair or replacement of the windows. The insurance policies that Auto-Owners had issued the Builder were two identical commercial general liability (CGL) policies. The policies provided coverage for the "sums that the insured becomes legally obligated to pay as damages because of `bodily injury' or `property damage'" caused by an "occurrence" within the "coverage territory" during the policy period. As defined in the policies, an "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," and "property damage" includes "[p]hysical injury to tangible property, including all resulting loss of use of that property." The policies also contain "products-completed operations hazard" coverage that
[i]ncludes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
. . . .

*1245 (2) Work that has not yet been completed or abandoned.[[3]]
The coverage provisions are limited by numerous exclusions. Of particular relevance are those exclusions, with their exceptions, that exclude coverage for damage to the insured's property and work:
j. "Property damage" to:
. . . .
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
. . . .

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".
. . . .
l. "Property damage" to "your work" arising out of it or any part of it and including in the "products-completed operations hazard".
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
(Emphases supplied.)[4]
The parties filed cross-motions for summary judgment.[5] Auto-Owners argued that the Homeowner originally sued the Builder in the underlying lawsuit for "defective construction and poor workmanship for work done in the installation of the windows." Similarly, in its memorandum in support of its cross-motion for partial summary judgment, Pozzi contended that coverage existed because of the defective installation performed by the Subcontractor, rather than asserting that the windows themselves were damaged or defective.
The federal district court granted Pozzi's cross-motion for summary judgment and found that the policies provided coverage for the Subcontractor's defective work. See Pozzi Window, 446 F.3d at 1181.[6] On appeal, the Eleventh Circuit *1246 concluded that under this Court's decision in State Farm Fire & Casualty Co. v. CTC Development Corp., 720 So.2d 1072, 1076 (Fla.1998), "[d]efective construction is an `occurrence' under Florida law." Pozzi Window, 446 F.3d at 1184. However, the Eleventh Circuit recognized that this Court's earlier decision in LaMarche v. Shelby Mutual Insurance Co., 390 So.2d 325 (Fla.1980), used broad language and reasoning that indicated that CGL policies generally do not cover the costs of repair and replacement of defective work. See Pozzi Window, 446 F.3d at 1185. The Eleventh Circuit also noted that as a result of the Second District's decision in J.S.U.B., Inc. v. United States Fire Ins. Co., 906 So.2d 303 (Fla. 2d DCA 2005), there was a split in Florida case law on this issue. See Pozzi Window, 446 F.3d at 1186. Accordingly, the court certified to this Court the unsettled question of Florida law. See id. at 1188.

ANALYSIS
The question certified by the Eleventh Circuit asks whether a post-1986 standard form CGL policy with products-completed operations hazard coverage, issued to a general contractor, provides coverage for the repair or replacement of a subcontractor's defective work. This is an issue of insurance policy construction, which is a question of law subject to de novo review. See Fayad v. Clarendon Nat'l Ins. Co., 899 So.2d 1082, 1085 (Fla. 2005). In addressing this issue, we first review our decision in J.S.U.B., which involved policy language that is identical in all material respects to the policies at issue in this case and addressed a question similar to the one posed by the Eleventh Circuit. We then apply our reasoning in J.S.U.B. to this case.

The J.S.U.B. Decision
In J.S.U.B., after the contractor completed the construction of several homes, damage to the foundations, drywall, and other interior portions of the homes appeared. See 979 So.2d at 875. It was undisputed that the damage to the homes was caused by subcontractors' use of poor soil and improper soil compaction and testing. See id. The contractor sought coverage under its CGL policies issued by United States Fire Insurance Company. The insurer agreed that the policies provided coverage for damage to the homeowners' personal property, such as the homeowners' wallpaper, but asserted that there was no insurance coverage for the costs of repairing the structural damage to the homes, such as the damage to the foundations and drywall. See id. at 876.
The issue presented to this Court was "whether a post-1986 standard form commercial general liability policy with products-completed operations hazard coverage, issued to a general contractor, provides coverage when a claim is made against the contractor for damage to the completed project caused by a subcontractor's defective work." Id. at 877. We addressed this question in two parts. We first determined whether faulty workmanship can constitute an "occurrence." See id. at 883. After reviewing our decisions in LaMarche and decisions from other jurisdictions, we held that *1247 "faulty workmanship that is neither intended nor expected from the standpoint of the contractor can constitute an `accident' and, thus, an `occurrence' under a post-1986 CGL policy." Id. at 888. In doing so, we rejected the insurer's assertion that a subcontractor's faulty workmanship can never be an "occurrence," which is defined as "an accident," because faulty workmanship results in reasonably foreseeable damages and is a breach of contract not covered by general liability policies. We explained that we previously "rejected the use of the concept of `natural and probable consequences' or `foreseeability' in insurance contract interpretation in CTC Development," id. at 883, and that nothing in the language of the insuring agreement differentiated between tort and contract claims. See id. at 884. We also noted that "a construction of the insuring agreement that precludes recovery for damage caused to the completed project by the subcontractor's defective work renders the `products-completed operations hazard' exception to exclusion (j)(6) and the subcontractor exception to exclusion (l) meaningless." Id. at 887. Accordingly, we concluded that the subcontractors' defective soil preparation, which was neither intended nor expected by J.S.U.B., was an "occurrence." Id. at 888.
We then addressed whether the subcontractors' defective soil preparation caused "property damage" within the meaning of the policy. See id. at 888-89. We held that faulty workmanship or defective work that has damaged the completed project has caused "physical injury to tangible property" within the plain meaning of the definition in the policy. See id. at 889. In reaching this conclusion, we rejected the insurer's arguments that faulty workmanship that injures only the work product itself does not result in "property damage" and that "there can never be `property damage' in cases of faulty construction because the defective work rendered the entire project damaged from its inception." Id. We also observed that "[i]f there is no damage beyond the faulty workmanship or defective work, then there may be no resulting `property damage.'" Id. Because structural damage to the completed homes was caused by the defective work, we concluded that there was "physical injury to tangible property" and thus the claim against the contractor for the structural damage was a claim for "property damage" within the meaning of the policies. See id. at 890.

This Case
The Eleventh Circuit characterizes the "defective work" in this case in two distinct manners. The opinion initially notes that the issue in the case is "whether the Policies cover [the Builder's] liability for the repair or replacement of the defectively installed windows." Pozzi, 446 F.3d at 1179. However, the opinion later refers to "the repair or replacement of the defective windows." Id. at 1181. In fact, the federal district court also used the terms "defective windows" and "defective installation" interchangeably, noting first that the issue in the case was "whether insurance coverage exists for the repair [of] the defective windows," and later finding that coverage existed because "the defective installation of the windows" was performed by a subcontractor. Accordingly, there appears to be a factual issue as to whether the windows themselves were defective or whether the faulty installation by the Subcontractor caused damage to both the windows and other portions of the completed project. Based on our decision in J.S.U.B., this factual issue is critical.
At each stage of the litigation, from the underlying complaint filed by the *1248 Homeowner through the Eleventh Circuit's decision in this suit between Pozzi and Auto-Owners, there have been conflicting allegations about whether the windows were defective before they were installed. If the windows were purchased by the Homeowner and were not defective before being installed, coverage would exist for the cost of repair or replacement of the windows because there is physical injury to tangible property (the windows) caused by defective installation by a subcontractor. In that instance, damage to the windows caused by the defective installation is the same as damage to other portions of the home caused by the leaking windows. However, a different result would follow if the windows were defective prior to being installed and the damage to the completed project was therefore caused by defective windows rather than faulty installation alone.
Similar to the CGL policies at issue in J.S.U.B., the CGL policies issued by Auto-Owners to the Builder in this case provide coverage for an "occurrence" that causes "property damage." Our analysis of the term "occurrence" is controlled by our decision in J.S.U.B., in which we held that "faulty workmanship that is neither intended nor expected from the standpoint of the contractor can constitute an `accident' and, thus, an `occurrence' under a post-1986 CGL policy." 979 So.2d at 888. Auto-Owners does not contend, and there is no indication in the record, that the Builder expected the windows to be defectively installed. Thus, as was the faulty soil preparation in J.S.U.B., the defective installation of the windows in this case, which the Builder did not intend or expect, was an "occurrence" under the terms of the CGL policies. However, as we noted in J.S.U.B., in order to determine whether the policies provide coverage, we must also address whether the "occurrence" caused "property damage" within the meaning of the policies. See id. It is the analysis of this issue that is directly affected by the factual issue apparent in the record.
The CGL policies define "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property." In J.S.U.B., we explained that other courts have also "recognized that there is a difference between a claim for the costs of repairing or removing defective work, which is not a claim for `property damage,' and a claim for the costs of repairing damage caused by the defective work, which is a claim for `property damage.'" Id. at 889. For example, in West Orange Lumber Co. v. Indiana Lumbermens Mutual Insurance Co., 898 So.2d 1147, 1148 (Fla. 5th DCA 2005), a lumber company sought coverage under a CGL policy when it failed to provide the proper grade of cedar siding. There was no damage to the construction itself. The Fifth District Court of Appeal concluded that there was no allegation of "property damage" when the only damage alleged was the cost of removing and replacing the wrong grade cedar siding that had been installed. See id. In essence, the mere inclusion of a defective component, such as a defective window or the defective installation of a window, does not constitute property damage unless that defective component results in physical injury to some other tangible property.
Accordingly, if the claim in this case is for the repair or replacement of windows that were defective both prior to installation and as installed, then that is merely a claim to replace a "defective component" in the project. As the Supreme Court of Tennessee recently explained:
[A] "claim limited to faulty workmanship or materials" is one in which the sole damages are for replacement of a defective *1249 component or correction of faulty installation.
. . . [The contractor's] subcontractor allegedly installed the windows defectively. Without more, this alleged defect is the equivalent of the "mere inclusion of a defective component" such as the installation of a defective tire, and no "property damage" has occurred.

Travelers Indem. Co. of Am. v. Moore & Assocs., Inc., 216 S.W.3d 302, 310 (Tenn. 2007) (emphasis supplied). Because the Subcontractor's defective installation of the defective windows is not itself "physical injury to tangible property," there would be no "property damage" under the terms of the CGL policies. Accordingly, there would be no coverage for the costs of repair or replacement of the defective windows.
Conversely, if the claim is for the repair or replacement of windows that were not initially defective but were damaged by the defective installation, then there is physical injury to tangible property. In other words, because the windows were purchased separately by the Homeowner, were not themselves defective, and were damaged as a result of the faulty installation, then there is physical injury to tangible property, i.e., windows damaged by defective installation. Indeed, damage to the windows themselves caused by the defective installation is similar to damage to any other personal item of the Homeowner, such as wallpaper or furniture. Thus, coverage would exist for the cost of repair or replacement of the windows because the Subcontractor's defective installation caused property damage.

CONCLUSION
As previously discussed, the record appears to contain a factual issue as to whether the "defective work" in this case is limited to the faulty installation or whether the windows themselves were also defective. Because that factual issue is determinative of the outcome, based upon our recent decision in J.S.U.B., we return this case to the United States Court of Appeals for the Eleventh Circuit.
It is so ordered.
WELLS, ANSTEAD, QUINCE, and BELL, JJ., concur.
LEWIS, C.J., concurs in result only with an opinion.
CANTERO, J., recused.
LEWIS, C.J., concurring in result only.
I have provided my view on the extent of coverage afforded by post-1986 standard-form commercial general liability policies ("CGL") concerning faulty subcontractor work that damages the completed project in my concurrence in the result only in United States Fire Insurance Co. v. J.S.U.B. Inc., 979 So.2d 871 (Fla.2007). If this case exclusively involves a claim to recover the costs associated with replacing a defectively installed component, which has not caused any damage to the completed project, then this case does not involve "property damage" within the meaning of a CGL policy. If the situation is otherwise, I would refer the Eleventh Circuit to our opinion in J.S.U.B.
NOTES
[1] Importantly, the consent judgment never resolved the apparent factual dispute as to what caused the damage to the home in this case. The Homeowner seemed to argue that the windows themselves were defective and were also defectively installed. Conversely, Pozzi maintained that the actual windows were not defective, but that the faulty installation resulted in damage to both the home and to the windows themselves.
[2] Pozzi argued that the Subcontractor "negligently installed the windows in at least the following respects: By ignoring Pozzi's manufacturer's instructions and applicable building codes requiring that the windows be installed plumb, level and square; by undersizing the window openings; by failing to install wooden bucks in framing the windows; and by failing to install shims properly to secure and level the windows."
[3] Under the policies, the Builder had a per occurrence limit of $1 million, a general aggregate limit of $1 million, and a separate products-completed operations hazard aggregate limit of $1 million for which additional premiums were charged.
[4] The policies define "your work" as follows:

"Your work" means:
a. Work or operations performed by you or on your behalf; and
b. Materials, parts or equipment furnished in connection with such work or operations.
"Your work" includes:
a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
b. The providing of or failure to provide warnings or instructions.
[5] In a Statement of Undisputed Material Facts, which was agreed to by the parties after the motions for summary judgment were filed, Pozzi and Auto-Owners agreed that the Homeowner's initial complaint alleged that the Subcontractor negligently installed the windows, which caused damage to the walls, floors, ceiling, and to the windows themselves and that Pozzi promised to remedy the defective installation of the windows in the settlement agreement with the Homeowner. However, the stipulation never addressed whether the windows were defective and only agreed upon the fact that the underlying claim was for defective installation that also damaged the windows.
[6] A jury trial before a magistrate judge resulted in a finding of bad faith and a punitive damages award of $500,000 against Auto-Owners. On Auto-Owners' motion for judgment as a matter of law, the magistrate judge concluded that there was insufficient evidence to support the jury's finding of bad faith and award of punitive damages. The Eleventh Circuit affirmed the magistrate's grant of judgment as a matter of law on these issues. See id. at 1189. Because these issues are not the subject of the question certified by the Eleventh Circuit, we decline to address them. See Hawkins v. Ford Motor Co., 748 So.2d 993, 997 n. 5 (Fla.1999) (declining to address issues outside the scope of the certified question and already addressed by the Eleventh Circuit).