1 So.3d 1092 (2009)
Lee DONTON, Appellant,
v.
STATE of Florida, Appellee.
No. 1D07-3629.
District Court of Appeal of Florida, First District.
January 8, 2009.
*1093 Daren L. Shippy, of Rose Sundstrom & Bentley, LLP, Tallahassee, for Appellant.
Bill McCollum, Attorney General; and Jennifer J. Moore, Assistant Attorney General, Tallahassee, for Appellee.
BROWNING, J.
A jury found Lee Donton (Appellant) guilty of one count of sexual battery upon a victim with a mental defect, a violation of section 794.011(4)(e), Florida Statutes (2005). In pertinent part, the second amended information charged Appellant with the commission of this crime upon a person (with a mental defect) 12 years of age or older, by penile union with, or penetration of, the victim's anus, sometime between May 24, 2005, and June 23, 2005, in the shower area of the Leon County Juvenile Detention Center. We affirm the judgment and sentence.

The Admission of Williams Rule Evidence
A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. See Ray v. State, 755 So.2d 604, 610 (Fla.2000). "The same standard applies to rulings ... admitting collateral act evidence," subject to the rules of evidence. Zerbe v. State, 944 So.2d 1189, 1193 (Fla. 4th DCA 2006); Nardone v. State, 798 So.2d 870, 874 (Fla. 4th DCA 2001). The first issue on appeal is whether the trial court abused its discretion in admitting certain so-called Williams Rule collateral-crime evidence. See § 90.404(2)(a), Fla. Stat. (2005); Williams v. State, 110 So.2d 654 (Fla. 1959). The State filed timely notice of intent to use evidence of Appellant's prior acts, and in a pretrial motion in limine, Appellant sought to exclude this Williams Rule evidence.
At the May 2006 hearing on the motion, the trial court heard testimony from a mother (C.D.) that, in June 2004, Appellant's grandmother had babysat for the witness' young son (L.S.) and young daughter (P.K.). On June 23, 2004, the mother left her children at the babysitter's residence around 4:00 a.m. The mother testified that after she picked up the children after returning from work that afternoon, her daughter complained (while climbing the stairs to the family residence) that her "cuckoo" (which was her name for her vagina) was hurting. The daughter told her mother than "Lee-Lee" (her nickname for Appellant) had hurt her by licking her "cuckoo" and touching it with his hand. When the mother reported this information to the babysitter and to Appellant, he denied it. At some point, the mother's son disclosed that he had observed Appellant committing the sexual misconduct upon the little girl, his sister. Before that incident, Appellant had been like a big brother to these two children, who had known Appellant all their lives. So far as their mother knew, this was the first time Appellant had been alone in his grandmother's residence with the children, while she left the children sleeping during her errand into town. This incident involving Appellant and P.K. was handled in juvenile court, where Appellant entered a plea.
At the evidentiary hearing, 5-year-old P.K. testified that she understood the difference between the truth and a lie. She described the 2004 incident in the babysitter's home when she and her brother were asleep in the bed. The babysitter left the house and did not want to disturb P.K. and *1094 her brother. As L.S. slept, P.K. woke up and saw Appellant in the bedroom. Because she had wetted herself, P.K. asked Appellant to leave the room so that she could change into other panties, but Appellant refused to do so. After P.K. got under the covers to change her panties, Appellant pulled down her panties and licked her "cuckoo," her private area. When the children returned home, P.K.'s "cuckoo" hurt "real bad" as she climbed the steps, and she told her mother what Appellant had done.
P.K.'s brother, L.S., testified at the hearing that he knew the difference between the truth and a lie. He recalled the 2004 incident when he and his sister were sleeping in the babysitter's bedroom while the babysitter took another child somewhere else. As L.S. returned to the bedroom after using the bathroom, he saw "Lee-Lee" going into the bedroom. He observed Appellant using his fingers to "open" P.K. and lick her private area. During the incident, P.K. sat on the bed as Appellant kneeled on the floor. Because he had seen what happened, L.S. ran back to the bathroom. He did not know whether Appellant saw him. Later, L.S. told his mother what he had observed.
Jo Ellen Brown, an FDLE crime lab analyst, testified at the hearing that she had received a sexual assault kit that containing vaginal swabs and a vaginal smear, a red T-shirt, and red shorts, as well as buccal swabs from Appellant. Amylase, a component of saliva, was found on the vaginal swabs and on the panties. The DNA profile showed the amylase was not the victim's. Some of the DNA came from a male, and some came from the female victim. Brown was able to develop a profile of a foreign allele or gene at four of the thirteen loci (markers) tested, and of these, Appellant was a possible donor. Appellant is African-American. Brown testified that the frequency of the occurrence of that profile in unrelated individuals is 1 in 3,500 for Caucasians; 1 in 740 for African-Americans; and 1 in 1,700 for Southeastern Hispanics. Brown testified that the foreign alleles at four of the loci matched Appellant and could not exclude him.
Arguing against the admission of this "prior act" evidence, defense counsel focused on the dissimilarities between the 2004 female child molestation (where the victim was three years old) and the charged 2005 crime involving penile union with, or penetration of, the anus of a male teenager, R.M. Defense counsel asserted that even if the court found this "other crime" evidence relevant, it should be excluded because the danger of unfair prejudice substantially outweighed its probative value, and the challenged evidence could become a feature of the trial. The defense contended that, because the mentally defective victim of the charged offense would not be able to testify, the admission of the Williams Rule evidence would prompt the jury to substitute the prior victim for the current victim. Counsel argued that any involvement Appellant had with the mentally defective victim in the charged offense arose because the juvenile detention staff had ordered Appellant to assist in the unpleasant aspects of the 300-pound-victim's care and personal hygiene, contrary to the formal policies at the juvenile detention facility.
On the other hand, the State argued that the Williams Rule evidence is relevant to prove opportunity, motive, and intent, in that Appellant showed a pattern of insinuating himself into the role of caretaker and then seizing the opportunity to molest the victim sexually because the victim would be unable or unlikely to report the inappropriate sexual conduct. See § 90.404(2)(a), Fla. Stat. (2005). Appellant *1095 was left alone with two very young children at his grandmother's residence in 2004 while she ran errands. A year later, at the juvenile detention center, Appellant repeatedly volunteered to change R.M.'s diapers and to bathe him. The court heard argument that the State could select and schedule its witnesses in such a way that the evidence of the prior child molestation would not become an inflammatory feature of the trial. The court delayed the ultimate ruling on admissibility and ordered the attorneys not to mention the Williams Rule evidence during jury selection and opening statements without a showing of good cause.
Section 90.404(2)(a), Florida Statutes (2005), states:
(2) OTHER CRIMES, WRONGS, OR ACTS.
(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
Section 90.404(2)(b)1., Florida Statutes (2005), states:
In a criminal case in which the defendant is charged with a crime involving child molestation, evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.
In Williams, the Supreme Court of Florida set forth the general rule of admissibility of evidence of a collateral crime, stating that "relevant evidence will not be excluded merely because it relates to similar facts which point to the commission of a separate crime. The test of admissibility is relevance. The test of inadmissibility is lack of relevancy." 110 So.2d at 659-60. These principles are memorialized in the Florida Evidence Code. In the aftermath of Williams, the Supreme Court of Florida has stated that "the relevance of collateral crime evidence is often a function of similarity." McLean v. State, 934 So.2d 1248, 1255 (Fla.2006); see Bryan v. State, 533 So.2d 744, 746 (Fla.1988). Before Williams Rule evidence is admitted, the trial court must find that the State has presented clear and convincing evidence that the defendant committed the collateral acts. See McLean, 934 So.2d at 1256, 1262. The record supports the trial court's conclusion that the State's evidence presented at the hearing met this requirement.
It is evident that where the collateral evidence involves a sexual battery committed upon a child, and the perpetrator is a family member or close family friend or someone else in a "familial relationship" or setting with the victim, "a relaxed standard of admissibility" of the collateral-crime evidence applies. See McLean, 934 So.2d at 1257; Heuring v. State, 513 So.2d 122, 124 (Fla.1987); Triplett v. State, 947 So.2d 702, 703 (Fla. 5th DCA 2007). In such instances, as in the case at bar, the victim often knows the perpetrator, and identity is not an issue. The determination of whether to admit collateral-crime evidence involves the defendant's constitutional right to due process. Specifically, "[c]ollateral crime evidence violates a defendant's right to due process if it is so prejudicial that it denies the defendant a fair trial." McLean, 934 So.2d at 1261. Accordingly, section 90.403, Florida Statutes (2005), states in pertinent part:
Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, *1096 confusion of issues, misleading the jury, or needless presentation of cumulative evidence.
This statute delegates a "gatekeeping function" to the trial court, which must conduct a weighing and balancing analysis of the Williams Rule evidence. See McLean, 934 So.2d at 1261-62. To assist the trial courts in determining whether or not to admit collateral evidence involving child molestation when such evidence is offered to corroborate the victim's testimony, the McLean court required the threshold finding that the State proved the prior act(s) by clear and convincing evidence. See 934 So.2d at 1262. Next, the court in McLean set forth the following guidelines:
In assessing whether the probative value of evidence of previous molestations is substantially outweighed by the danger of unfair prejudice, the trial court should evaluate: (1) the similarity of the prior acts to the act charged regarding the location of where the acts occurred, the age and gender of the victims, and the manner in which the acts were committed; (2) the closeness in time of the prior acts to the act charge; (3) the frequency of the prior act; and (4) the presence or lack of intervening circumstances. This list is not exclusive. The trial courts should also consider other factors unique to the case.
Id. Additionally, trial courts must decide whether the prior act evidence "will confuse or mislead jurors by distracting them from the central issues of the trial"; must assess "whether the evidence is needlessly cumulative of other evidence bearing on the victim's credibility, the purpose for which this evidence may be introduced"; and "must guard against allowing the collateral-crime testimony to become a feature of the trial." Id. In Appellant's case, because the victim of the charged crime is essentially incapable of communicating in an effective, meaningful manner, the collateral-crime evidence was used to corroborate the eyewitness' testimony about the charged crime.
The guilt phase of Appellant's trial commenced. Judy O'Neil, a behavior analyst at a center school for children with developmental disabilities, testified that she would assess children with behavioral issues to determine the function of their behavior and then would prepare written behavior plans for the staff to follow. She knew the victim, R.M., who was a student at her school from 2000 until 2006. R.M., a teenager, was diagnosed as autistic and severely retarded. He was unable to recall accurately and explain events in a way that a normal 15-year-old would be expected to do. He communicated mostly with one-word answers or very short phrases. R.M. had very little concept of the differences between right and wrong behavior. O'Neil testified that R.M. lacked the capacity to understand the concept of sex or sexual intercourse. R.M. required staff assistance to perform bathroom functions. The witness described as fair and accurate the videotaped interview of R.M. by the Child Protection Team, in terms of its depiction of R.M.'s typical manner of speaking and acting. Over an objection, the videotape was admitted into evidence and shown to the jury as a demonstration from which the jury could infer the victim's capacity or lack thereof. R.M. was described as a large male who, at one point, weighed about 300 pounds.
Various witnesses who had been fellow detainees at the juvenile facility with Appellant and R.M. testified that R.M. had difficulty talking, was unable to take of himself, and regularly wore diapers. He required assistance with bathroom functions and bathing. Some evidence indicated that the staff had asked Appellant to assist with some of these caretaking functions, *1097 while other testimony indicated he had volunteered to help Appellant. Although the detainees usually showered between 4:00 and 7:00, Appellant would bathe or shower R.M. after everyone else finished.
Kenneth Meyer, Jr., the State's key witness on the charge relating to the shower area, testified that he had been a juvenile detainee with Appellant and R.M. in June 2005 and knew them both. Meyer identified Appellant in court. The witness described R.M. as about six feet in height, weighing around 300 pounds and having a "mind set" of a two- or three-year-old. Meyer described an incident that occurred shortly after the normal shower time. As Meyer walked into the bathroom area, he observed Appellant, with his pants down, standing behind R.M., who was naked. In sexually explicit vernacular, Meyer testified regarding what sexual act he saw Appellant performing upon R.M., namely, anal intercourse. Upon seeing Meyer, Appellant had "pulled out" and pulled up his pants, telling Meyer: "You didn't see anything." Appellant said something else indicating to Meyer that Meyer would be punished if he reported what he had seen. Despite the threat, Meyer immediately reported the incident to a guard and was interviewed by detectives. Meyer testified that he was "absolutely sure" of what he had observed in the shower area.
After Meyer's testimony, the trial court reiterated its finding that the State's evidence of Appellant's prior sexual molestation was clear and convincing. Defense counsel argued that, because Appellant was not denying that he had been present with R.M. in the shower area, the State had no reason to introduce "other act" evidence to prove opportunity.
The State responded that the Williams Rule evidence was relevant to prove Appellant's pattern of targeting a known, vulnerable child or child-like victim and serving as a purported caretaker in a role akin to familial authority, in which role he would sexually molest the victim. The State argued that the gender difference between P.K. (the prior victim) and R.M. was simply a matter of Appellant's having easy access to the young girl at his grandmother's residence, whereas the only "easy," vulnerable victims at the juvenile facility are male detainees. Whereas the defense noted the obvious physical distinctions between a 3-year-old girl and a 300-pound male teenager, the State compared the victims' child-like characteristics and vulnerability when away from proper adult supervision.
The court assessed the similarity of the prior act to the charged act, in that Appellant engaged in non-consensual sex with one very young victim and another victim whose mental status rendered him child-like and unable to take care of and protect himself. The prior act occurred in a bedroom when the female victim was left without adequate adult supervision and Appellant apparently believed no one was watching him. The charged act occurred in the shower area of the juvenile facility at a time other than when the detainees usually bathed. According to Meyer's eyewitness testimony, Appellant was surprised by Meyer's presence in the shower area and warned him not to disclose what he had seen occurring between Appellant and R.M. It is reasonable to infer that in the 2004 incident at the babysitter's residence and in the charged 2005 incident at the juvenile detention facility, Appellant did not expect to be caught having sex with the victims. The trial court found that the prior act upon P.K. occurred once, in close temporal proximity to the charged offense. Acknowledging the obvious anatomical differences between the two victims, the court concluded that, in a *1098 broader sense, the prior act and the charged act are similar, in that Appellant acted with "an authoritative familiarity" over both victims, whom he already knew and exploited when given the opportunity to be alone with them. See Mendez v. State, 961 So.2d 1088, 1091 (Fla. 5th DCA 2007) (concluding that the probative value of collateral-crime evidence involving a prior incident of child molestation by the defendant outweighed the danger of unfair prejudice, in a trial for sexual battery on a victim less than 12 years old and lewd and lascivious molestation, where the defendant had a similar relationship with both victims, he gained employment that gave him access to young victims, he was a counselor to each and had custodial authority over them at the time of the offenses, the incidents occurred only two or three years apart, and the incidents both occurred in the victims' abodes).
Having considered these factors, which are enunciated in McLean, 934 So.2d at 1262, the court allowed the Williams Rule evidence to be admitted. To reduce the inflammatory impact of the collateral-crime evidence, the court arranged for other witnesses to precede and follow L.S., the brother of the prior victim. The jury did not hear P.K. testify. This configuration of the witnesses' testimony kept the Williams rule evidence from becoming a feature of the trial. Subject to the limiting instruction requested by defense counsel, L.S. and Ms. Brown, the FDLE crime lab analyst, testified as to substantially the same facts that were presented at the evidentiary hearing. The trial court did not allow into evidence any unnecessary or cumulative testimony.
In the Williams Rule proceedings, the trial court afforded counsel for the State and for Appellant generous opportunities to argue the facts and the law. The State presented ample reasons from which the court could conclude that the collateral-crime evidence was admissible under section 90.404(2)(b), Florida Statutes (2005), which is a general rule of admissibility, subject to certain exceptions, rather than a general exclusionary rule. See Williams, 110 So.2d at 658. Additionally, the State argued the applicability of the somewhat relaxed standard of admission enunciated in section 90.404(2)(b)1., Florida Statutes (2005), and fully discussed in McLean. Appellant concedes on appeal that the charged crime involved "child molestation," and the particular evidence adduced in the trial court certainly supports the conclusion that the victim is, for all intents and purposes, a "child," and that he was molested. Given the record, we conclude that the trial court correctly applied the law, and we find no abuse of discretion in the trial court's allowing into evidence the collateral-crime evidence.
Section 90.610(1), Florida Statutes (2005), allows a party to "attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year under the law under which the witness was convicted, ..." However, statutory subsection (1)(b) states that "[e]vidence of juvenile adjudications are [sic] inadmissible under this subsection." See Martin v. State, 710 So.2d 58 (Fla. 4th DCA 1998) (stating that the adult defendant's alleged companion in a burglary could not be impeached during the adult defendant's burglary trial with the alleged companion's plea of no contest to a charge of trespass on the victim's property in a juvenile adjudication). Appellant elected not to testify in his own behalf. Responding to defense counsel's objection to the Williams Rule evidence because it involved a juvenile offense, the trial court noted that the collateral-crime evidence was admitted only as an "act," not as a *1099 "conviction" or adjudication of delinquency. The trial court is in the better position to determine whether testimony can be admitted pursuant to the McLean line of decisions, and we shall not second-guess the circuit judge on this record. See Fiore v. State, 967 So.2d 995, 999 (Fla. 5th DCA 2007). Given these detailed findings made by the trial court pursuant to McLean, and the ample precautions taken to avoid emphasizing the collateral-crime evidence, we find no abuse of discretion in the trial court's overruling the defense's objections and in denying the motion for mistrial. The trial court took steps to avoid the danger of undue prejudice in accordance with section 90.403, Florida Statutes (2005). Appellant was afforded the due process required by law.

Denial of the Motion for Judgment of Acquittal as to Count Two
Count One of the second amended information charged Appellant with a sexual battery upon R.M., a person 12 years of age or older, with a mental defect. This charge referred to an alleged incident in R.M.'s room in the juvenile detention center sometime between May 24, 2005, and June 23, 2005. The trial court correctly granted the motion for judgment of acquittal on Count One.
Appellant argues that the court erred as a matter of law in denying his motion for judgment of acquittal on Count Two, which charged the sexual battery of R.M. that occurred in the shower area of the detention facility. We have de novo review of the denial of a motion for judgment of acquittal. See Fitzpatrick v. State, 900 So.2d 495, 507 (Fla.2005). To make a prima facie case for the charged crime in Count Two, the State had to prove the following beyond a reasonable doubt: 1) that R.M. was 12 years of age or older at the time of the incident and was "mentally defective" (defined by statute as having "a mental disease or defect which renders a person temporarily or permanently incapable of appraising the nature of his or her conduct"), a fact of which Appellant had actual knowledge or reason to believe; 2) that Appellant committed an act upon R.M. in which Appellant's penis had union with, or penetrated, the victim's anus; and 3) that the act was committed without R.M.'s consent. See § 794.011(1)(b), (1)(h) & (4)(e), Fla. Stat. (2005). Scott Beck, a police investigator, testified that R.M.'s birth date is October 26, 1989. From the witnesses' testimony and other events reported to have occurred around the same time, Investigator Beck testified that the shower incident probably occurred on June 8, 2005.
On appeal, Appellant's only argument regarding the sufficiency of the evidence relates to whether Appellant's penis had union with, or penetrated, the victim's anus. Appellant asserts that the evidence is entirely circumstantial, that the State failed to present evidence inconsistent with any reasonable hypothesis of innocence, and that the only way eyewitness Meyer's testimony can be deemed sufficient to prove this element is through the impermissible pyramiding of inferences. See Floyd v. State, 913 So.2d 564, 571 (Fla. 2005); Kennedy v. State, 781 So.2d 421, 423 (Fla. 4th DCA 2001). "An impermissible pyramiding of inferences occurs where at least two inferences in regard to the existence of a criminal act must be drawn from the evidence and then stacked to prove the crime charged; in that scenario, it is said that the evidence lacks the conclusive nature to support a conviction." Graham v. State, 748 So.2d 1071, 1072 (Fla. 4th DCA 1999). Appellant contends that the paucity of evidence is even more striking, given the examining pediatrician's testimony that no signs of anal injury were found.
Appellant's arguments fail for two reasons. First, the State presented *1100 direct evidence of the sexual battery by an eyewitness, Mr. Meyer. "Direct evidence is that to which the witness testifies of his own knowledge as to the facts at issue. Circumstantial evidence is proof of certain facts and circumstances from which the trier of fact may infer that the ultimate facts in dispute existed or did not exist." Davis v. State, 90 So.2d 629, 631 (Fla. 1956). Meyer testified that he walked in on Appellant and R.M. in the shower room engaging in anal intercourse. Meyer's sexually graphic testimony depicting what he had observed first-hand was based on his own knowledge of the facts. Appellant misplaces his reliance on J.W.C. v. State, 573 So.2d 1064 (Fla. 5th DCA 1991), in which the child, an alleged victim of sexual battery involving the defendant's finger and the child's vagina, merely stated that the defendant had "played with [her] privates." Without some corroboration, the child's statement was not sufficient to support a finding of actual penetration. See id. at 1064-65. In contrast, viewed appropriately in a light most favorable to the State, see Lynch v. State, 293 So.2d 44, 45 (Fla.1974), Meyer's testimony supports the trial court's denial of the motion for judgment of acquittal on Count Two.
For the first time on appeal, Appellant argues that the State failed to prove that eyewitness Meyer had a vantage point from which he could testify from personal knowledge that Appellant's penis actually had union with, or penetrated, R.M.'s anus. Conceding that the evidence supports a conviction for battery, Appellant contends that Meyer could not have observed whether Appellant's penis was merely rubbing the victim's buttocks. Because this specific argument was not made and thereby preserved in the trial court, it is inappropriate for judicial review. See Steinhorst v. State, 412 So.2d 332, 338 (Fla. 1982). Appellant does not argue that fundamental error resulted.
Second, pediatrician Dr. Samuel Moorer testified that he had examined R.M. on June 28, 2005, in response to the alleged sexual assault. The physician testified that, because R.M. is profoundly retarded and essentially non-verbal, no meaningful communication with him was possible. The head-to-toe examination for lacerations or other signs of trauma disclosed nothing more than old injuries, apparently self-inflicted during periods of anxiety. Dr. Moorer opined that the absence of any sign of anal injury is unsurprising, in that it would be very unlikely for substantial evidence of that type to exist approximately 20 days after the shower incident. The doctor testified that the absence of anal injury would not rule out a recent sexual assault.
In moving for a judgment of acquittal on Count Two, defense counsel relied on certain inconsistencies within Meyer's accounts to the authorities regarding the shower incident. Trial defense counsel (who is not the attorney representing Appellant in this direct appeal) acknowledged that "a credibility issue" was raised as to what the eyewitness saw, which, "in all fairness, ... [created] a question for the jury." We agree that Count Two was correctly sent to the jury. Because the State made a prima facie case for the charged crime, the trial court correctly denied the motion for judgment of acquittal as to Count Two.

Alleged Discrepancy Between Oral and Written Sentencing Pronouncements
Finally, Appellant contends that the written judgment imposing fines and costs differs from the oral pronouncement at sentencing. Appellant correctly notes that an oral pronouncement of a sentence controls over the written sentencing judgment. See Williams v. State, 957 So.2d 600, 603 (Fla.2007). As the State points out, the instant record contains no discrepancy. The written judgment of fines and *1101 costs lists the total amount as $2,988.00. At the sentencing hearing, the judge orally imposed costs and fines totaling $2,948.00 and then immediately added a $40.00 "public defender application fee imposed as a civil judgment" pursuant to section 27.52(1)(b), Florida Statutes (2005), which amount is specifically listed on the written judgment. The total amount of costs and fines is $2,988.00, and the oral and written sanctions are the same.
We AFFIRM Appellant's conviction and sentence.
WOLF, J., concurs; BENTON, J., dissents with opinion.
BENTON, J., dissenting.
The evidence concerning the other crime a year earlier was not, in my opinion, legally admissible to prove the crime charged in the present case. Identity was not an issue, nor was this a "familial" case. According to our supreme court, proper application of the Evidence Code "does not open the door to introduction of any and all propensity evidence in sexual molestation cases." McLean v. State, 934 So.2d 1248, 1251 (Fla.2006).