[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 14, 2011
JOHN LEY
CLERK

No. 10-12821

_____

D.C. Docket No. 0:09-cv-61119-WPD

PALM BEACH GRADING, INC.,

Plaintiff - Appellant,

versus

NAUTILUS INSURANCE COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 14, 2011)

Before BARKETT and WILSON, Circuit Judges, and WALTER,[*] District Judge.

PER CURIAM:

_____

[*]Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

This case involves interpretation of a standard commercial general liability insurance policy ("CGL"). Palm Beach Grading ("PBG") appeals the district court's grant of summary judgment in favor of Nautilus Insurance Company ("Nautilus"). PBG seeks reimbursement under the CGL policy provided by Nautilus for $256,208.01 stemming from the repair of a defective sewer system pipe. The district court granted summary judgment after concluding that the claim was not covered by the policy. After thorough review and with the benefit of oral argument, we affirm.

I.

This case arises from an insurance policy between Nautilus and a non-party, A-1 Underground Services, Inc. ("A-1"). PBG served as the general contractor for the Moody River Project and subcontracted with A-1 for A-1 to construct water utilities, sanitary sewer utilities, and storm drainage; and to complete other work on the project. A-1 worked from February 2006 until November 2006, but never completed the project. Instead, A-1 abandoned the project, and PBG hired another subcontractor, RDMC, Inc., to complete it.

The work that A-1 had completed proved defective. As a result, RDMC, Inc. dug up, repaired, and reburied certain sections of the sewer line. Repairing the defective sewer line required damaging other components of the Moody River

2

Project, including, for example, digging through and breaking apart the surrounding subgrade, road, curbing, sidewalk, and asphalt. PBG alleges that, as a result, it incurred repair costs of $256,208.01.

To recover those repair costs, PBG first sued A-1, and ultimately obtained a final judgment of $954,833.62. PBG then sued Nautilus to recover a portion of the final judgment under the terms of A-1's CGL policy with Nautilus. The district court granted summary judgment in favor of Nautilus. The court reasoned that both Florida law and exclusions contained in the parties' policy prohibited recovery of the repair costs. This is PBG's appeal.

## II.

Our review is de novo. Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., 254 F.3d 987, 1003 (11th Cir. 2001) ("The question of the extent of coverage under an insurance policy is a question of law to be decided by the court and is therefore subject to plenary review by this Court."); Huff v. Dekalb Cnty., Ga., 516 F.3d 1273, 1277 (11th Cir. 2008) ("This Court reviews de novo a district court's grant or denial of summary judgment."). "Because federal jurisdiction over this matter is based on diversity, Florida law governs the determination of the issues on this appeal." State Farm Fire & Cas. Co. v. Steinberg, 393 F.3d 1226, 1230 (11th Cir. 2004). We are also mindful that we may affirm on any ground

supported by the record. Trotter v. Sec'y, Dep't of Corr., 535 F.3d 1286, 1291 (11th Cir. 2008).

We conclude that the repair costs PBG incurred as a result of A-1's negligence are not covered under the CGL policy between Nautilus and A-1, because the damage did not constitute "property damage" within the meaning of the policy. While faulty workmanship may constitute an "occurrence" under the policy, "the fact that damages may result from an 'occurrence' under a CGL policy is only the first step in determining whether the damages are covered." U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 888 (Fla. 2007). In this case, we determine that the "occurrence"—A-1's defective work—did not cause "property damage" within the meaning of the policy.

The policy provides that Nautilus will insure A-1 for certain "property damage," which the policy defines as, inter alia, physical injury to tangible property. The Florida Supreme Court has explained that "there is a difference between a claim for the costs of repairing or removing defective work, which is not a claim for 'property damage,' and a claim for the costs of repairing damage caused by the defective work, which is a claim for 'property damage.'" Id. at 889 (explaining that "[i]f there is no damage beyond the faulty workmanship or defective work, then there may be no resulting 'property damage'"); see also

4

Auto-Owners Ins. Co. v. Pozzi Window Co., 984 So. 2d 1241, 1248 (Fla. 2008) ("[T]he mere inclusion of a defective component, such as a defective window or the defective installation of a window, does not constitute property damage unless that defective component results in physical injury to some other tangible property.").

The problem with PBG's claim is that the defective pipe did not cause damage independent of the repair and replacement of the pipe. For example, the pipes never burst, caused sinkholes, or caused back-ups. Rather, PBG's claim is solely for the costs of repairing and removing the defective pipe, which is not a claim for "property damage." See J.S.U.B., 979 So. 2d at 890; Pozzi Window Co., 984 So. 2d at 1248. As a result, we hold that the district court correctly concluded that Nautilus's policy does not cover PBG's repair costs.

**AFFIRMED.**