CARNES, Circuit Judge,
dissenting:
My colleague, Judge Hill, concurs “dubitante” in the decision of this Court affirming the judgment of the district court. By contrast, my dissent is free of dubitanteness. I am not dubitante in the least that the Florida Supreme Court’s decision in Auto-Owners Insurance Co. v. Pozzi Window Co., 984 So.2d 1241 (Fla.2008), dictates a decision in this case different from the one the majority reaches.
In the Pozzi Window case, the Florida Supreme Court held that coverage for the cost of repair or replacement of damaged windows depended on whether the windows were defective to begin with or were damaged because of improper installation. See id. at 1249. The court held that if the windows were not defective before being installed, the damage done to them was “property damage” for purposes of a commercial general liability insurance policy. See id. In our case, the Amelia Island Company’s roof tiles were not defective to begin with but were damaged when improperly installed. Under the Pozzi Window decision, that is “property damage” covered by the Amelia Island Company’s commercial general liability policy.
The windows involved in the Pozzi Window case were custom-made ones that a property owner bought directly from a retailer and had delivered to his property on which a house was being constructed for him. Id. at 1243. After a subcontractor installed the windows, water leaked in around them. See id. An insurance coverage dispute arose about the scope of *1311 “property damage,” which is the same term at issue in the present case. See id. at 1244-45. The insurer refused to pay for the cost of repairing or replacing the damaged windows. Id. at 1244.
In response to a certified question from this Court, the Florida Supreme Court held that whether the cost of repairing or replacing the windows was “property damage” under the policy hinged on a crucial factual issue. See id. at 1247. That factual issue was “whether the windows themselves were defective or whether the faulty installation by the Subcontractor caused damage to both the windows and other portions of the completed project.” Id. The “both ... and” construction in that sentence might be read to imply that damage to the windows alone would not be enough to constitute property damage. But that is not an accurate reading because the “damage to ... other portions of the completed project,” id., was not at issue in Pozzi Window; it was not at issue because the insurer had already paid for the “personal property damage caused by the leaking windows.” Id. at 1244. In response to our inquiry, the Florida Supreme Court addressed the question of whether the cost of repairing or replacing the damaged windows themselves was covered. See id. at 1243-44. The answer it gave was that it depended on whether the windows were defective or damaged before being installed. If they were, there was no policy coverage; however, if they were not defective or damaged before the installation began, the policy covered the cost of repairing or replacing the windows. Id. at 1243-44.
No one has suggested that the roof tiles involved in this case were defective or damaged before the installation began. Instead, everyone agrees that the damage to the tiles occurred because the subcontractor improperly installed them. As the majority opinion explains, defective installation caused the tiles to fall off of the roof, and some, of the tiles that fell hit other tiles and cracked them. Maj. Op. at 1296-97. None of the damaged tiles could be used or re-used, so all of those tiles were effectively destroyed. Destroyed roof tiles meet the commercial general liability policy’s definition of “property damage” as “[p]hysical injury to tangible property.” Doc. 36-2 at § V, ¶ 17a.
The destruction of those individual tiles was not the full extent of the property damage caused by the defective installation. Because some of the tiles were destroyed, all of the tiles on the roof had to be replaced. As the majority opinion explains, “the roof design did not permit inspection and replacement of defectively installed tiles on an individual basis,” and “tiles identical to those used on the Inn’s roof were unavailable.” Maj. Op. at 1297. For those reasons, under the terms of the general commercial liability insurance policy, the “property damage” that occurred as a result of the defective installation of the tiles was both the “[pjhysical injury to tangible property” (the destroyed tiles) and the “[l]oss of use of tangible property that is not physically injured” (the other tiles on the roof). Doc. 36-2 at § V, ¶¶ 17a, 17b.
Substituting roof “tiles” for “windows” in the key parts of the Florida Supreme Court’s Pozzi Window opinion shows that there is coverage in this case: “If the [tiles] were purchased by the [Amelia Island Company] and were not defective before being installed, coverage would exist for the cost of repair or replacement of the [tiles] because there is physical injury to tangible property (the [tiles]) caused by defective installation by a subcontractor.” Pozzi Window, 984 So.2d at 1248.
Again, substituting “tiles” for “windows” in the Pozzi Window opinion shows how we should decide this ease:
*1312 [I]f the claim is for the repair or replacement of [tiles] that were not initially defective but were damaged by the defective installation, then there is physical injury to tangible property. In other words, because the [tiles] were purchased separately by [the Amelia Island Company], were not themselves defective, and were damaged as a result of the faulty installation, then there is physical injury to tangible property, i.e., [tiles] damaged by defective installation. Indeed, damage to the [tiles] themselves caused by the defective installation is similar to damage to any other personal item of the [property owner], such as wallpaper or furniture. Thus, coverage would exist for the cost of repair or replacement of the [tiles] because the Subcontractor’s defective installation caused property damage.
Id. at 1249.
The majority opinion misinterprets the following sentence from the Pozzi Window opinion: “[T]he mere inclusion of a defective component, such as a defective window or the defective installation of a window, does not constitute property damage unless that defective component results in physical injury to some other tangible property.” Id. at 1248; see Maj. Op. at 1305. But the sentence that immediately follows that one in the Pozzi Window opinion shows how inapplicable the statement in that quoted sentence is to the present case: “Accordingly, if the claim in this case is for the repair or replacement of windows that were defective both prior to installation and as installed, then that is merely a claim to replace a ‘defective component’ in the project.” 984 So.2d at 1248 (emphasis added). In this case, the roof tiles were not a defective component — they were not “defective both prior to installation and as installed,” id.; the insured is not seeking to replace an initially defective component in the roofing project. Instead, under Pozzi Window, because the claim in this case is for the repair or replacement of tiles “that were not initially defective but were damaged by the defective installation, then there is physical injury to tangible property.” Id. at 1249. The Pozzi Window formula is: non-defective components damaged by defective installation equals physical injury to tangible property, which is property damage. Fed into that formula, the facts of this case add up to “property damage” and coverage.
The majority opinion attempts to frame the roof as a whole as the “defective component” in this case. See Maj. Op. at 1308, 1308-09 n. 20. But no part of the roof was ever defective except for the tiles that were damaged or destroyed because they were improperly installed. The facts of this case simply do not fit in the defective component scenario described in Pozzi Window. See 984 So.2d at 1248. Instead, these facts fit into the non-defective component/defective installation scenario. See id. at 1249. For that reason, I would hold that the Pozzi Window decision resolves the dispute in favor of insurance coverage.
The majority opinion, however, asserts that “[t]his case is like West Orange Lumber Co. ... where the cost of removing and replacing siding shingles — which were tiled in an overlapping, interlocking manner — was not property damage even though the defect necessitated a total replacement.” Maj. Op. at 1307. The majority’s West Orange Lumber analogy, like any defective component, won’t work. The installation of the siding shingles in that case did not damage them; the shingles were already “defective” before they were installed because they did not conform to the contract specifications. See W. Orange Lumber Co. v. Ind. Lumbermens Mut. Ins. Co., 898 So.2d 1147, 1148 (Fla. 5th DCA 2005). The subcontractor who had installed those defective shingles sued the supplier of them, and the court held that *1313 the insurance company had no duty to defend or indemnify the shingle supplier. Id. at 1147-48. The court noted: “[T]he allegations in the complaint show the owner or general contractor’s property suffered no damage from the failure to supply the correct quality of [shingles]. The only damage alleged was the cost or expense to the vendor to remove the defective product and supply an acceptable substitute.” Id. at 1148. The court also noted that the insurance policies in that case contained “exclusions which clearly exempt from coverage damages incurred by a vendor who supplies defective products and is required to remove and replace them with the specified products.” Id. at 1149 (emphasis added).
One more time. In this case tiles, which were the correct product and were not defective, were sold to the Amelia Island Company, and then they were damaged by defective installation, and as a result of that damage all of the tiles had to be replaced. The West Orange Lumber case is different because in it the shingles were the wrong product and for that reason were defective, requiring that all the shingles be replaced even though they were installed correctly. The Florida Supreme Court’s Pozzi Window decision is open and shut on the issue in this case, and the majority’s attempt to hammer the facts of this case into the West Orange Lumber decision is itself an instance of defective installation. And there is no reason to be dubitante about that.