29 So.3d 1000 (2010)
Michael PENZER, etc., Appellant,
v.
TRANSPORTATION INSURANCE COMPANY, Appellee.
No. SC08-2068.
Supreme Court of Florida.
January 28, 2010.
*1002 Marc A. Wites of Wites and Kapetan, P.A., Lighthouse Point, FL, Douglas S. Wilens and Stuart A. Davidson of Coughlin, Stoia, Geller, Rudman, and Robbins, LLP, Boca Raton, FL, for Appellants.
Raoul G. Cantero, III of White and Case, LLP, Miami, FL, Laura Besvinick and Parker D. Thomson of Hogan and Hartson, LLP, Miami, FL, and Arthur J. McColgan, II of Walker Wilcox Mastousek, LLP, Chicago, IL, for Appellee.
R. Hugh Lumpkin and Michael F. Huber of Ver, Ploeg, and Lumpkin, P.A., Miami, FL, Eugene R. Anderson, William G. Passannante, and Jane A. Horne of Anderson, Kill, and Olick, P.C., New York, NY, on behalf of United Policyholders; and Ronald L. Kammer and Maureen G. Pearcy of Hinshaw and Culbertson, LLP, Miami, FL, Laura A. Foggan and Parker Lavin of Wiley Rein, LLP, Washington, D.C., on behalf of Complex Insurance Claims Litigation Association, as Amicus Curiae.
POLSTON, J.
This case is before the Court for review of a question of Florida law certified by the United States Court of Appeals for the Eleventh Circuit that is determinative of a cause pending in that court and for which there appears to be no controlling precedent.[1]
The coverage issue in this insurance dispute concerns whether, under Florida law, the sending of an unsolicited advertisement by fax, in violation of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.A. § 227 (2001), is covered by a particular insurance policy provision. The Eleventh Circuit certified the following question:
Does a commercial Liability Policy Which Provides Coverage for "Advertising Injury," Defined as "Injury Arising out of ... Oral or Written Publication of Material That Violates a Person's Right of Privacy," Such as the Policy Described Here, Provide Coverage for Damages for Violation of a Law Prohibiting Using Any Telephone Facsimile Machine to Send Unsolicited Advertisement to a Telephone Facsimile Machine When No Private Information is Revealed in the Facsimile?
Penzer v. Transp. Ins. Co., 545 F.3d 1303, 1312 (11th Cir.2008).
For the reasons that follow, we hold that, under Florida law, the language of this insurance provision provides coverage for infringements of the TCPA. Accordingly, we answer the certified question in the affirmative.

*1003 I. BACKGROUND
In June 2003, Michael Penzer filed a class action suit in a Florida state court against Nextel South Corporation alleging that Nextel or one of its agents sent him an unsolicited facsimile advertisement in violation of the TCPA.[2]Penzer v. Transp. Ins. Co., 509 F.Supp.2d 1278, 1280 (S.D.Fla.2007). Nextel filed a third-party complaint against Sunbelt, a blast-fax advertiser, and Southeast Wireless, an authorized agent of Nextel, seeking indemnity and contributions for any liability Nextel may have in the class action. Id. Nextel also alleged that Southeast Wireless hired Sunbelt to create the advertisement and that Nextel did not authorize the fax transmissions. Id. Penzer then filed a third-party complaint against Southeast Wireless, and Southeast Wireless requested that Transportation Insurance Company ("Transportation"), its commercial liability insurer, defend it in the class action. Id. Transportation refused to provide a defense for the class action suit or the Nextel complaint, and also disclaimed any coverage on various grounds. Id. at 1281.
Thereafter, in April 2004, Penzer entered into a settlement agreement with Southeast Wireless in which Penzer agreed to release Southeast Wireless from any liability, and Southeast Wireless consented to a judgment and assigned its right to seek insurance coverage from Transportation to Penzer. Id. The state court approved the settlement and certified a settlement class. Id. Penzer then pursued a declaratory judgment action against Transportation in the United States District Court for the Southern District of Florida, wherein Transportation defended that, based upon the language of the policy, Transportation had no obligation to defend or indemnify Southeast Wireless. Id.
The insurance policy at issue here provides coverage for advertising injuries. The policy defines "advertising injury" as an "injury arising out of one or more of the following offenses:"
a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or
d. Infringement of copyright, title or slogan.
Id.
Transportation argued:
[T]he phrase "oral or written publication of material that violates a person's right of privacy," read as a whole and in context, provides coverage only for injuries to privacy rights caused by the content of the material. Second, Florida law interpreting the phrase "publication ... in violation of an individual's right of privacy" makes clear that coverage exists only when private matters about one person are communicated to another person. Although Southeast's conduct in having the commercial advertisements sent by facsimile may have violated the TCPA, there is no coverage under the *1004 policy because there were no content-based privacy violations.
Id. at 1283.
The Southern District agreed with Transportation. Specifically, it found that Transportation did "not have a duty to indemnify the plaintiffs for Southeast's violations of the TCPA." Id. at 1288.[3] It ruled that the policy language was not ambiguous and that "advertising injury coverage under this provision exists only when the content of the material published violates a person's right to privacy." Id. at 1286. The Southern District declined to adopt the reasoning of the Eleventh Circuit in Hooters of Augusta, Inc. v. American Global Insurance Co., 157 F. App'x 201 (11th Cir.2005), which reached the opposite conclusion under Georgia law, reasoning that (1) "Hooters did not address the main argument made by Transportation here," and (2) Florida law calls for a different result. 509 F.Supp.2d at 1284. Instead, the Southern District relied on the reasoning of the Third District Court of Appeal in State Farm Fire & Casualty Co. v. Compupay, Inc., 654 So.2d 944 (Fla. 3d DCA 1995), a case holding that an insurer had no duty to defend its insured against a sexual harassment claim under a policy provision that provided coverage for "a publication or utterance in violation of an individual's right of privacy." 509 F.Supp.2d at 1284 (quoting Compupay, 654 So.2d at 948).
Penzer appealed the Southern District's decision to the Eleventh Circuit, which concluded that "[n]either the policy exclusions nor Florida public policy lead to denial of coverage."[4]Penzer, 545 F.3d at 1311. However, the Eleventh Circuit also found that the disposition of this case rested on an unsettled issue of Florida law and that "[a] pure legal question of the interpretation of widely used language in commercial liability insurance is at issue."[5] *1005 Id. Accordingly, it certified its question to this Court. Id. at 1312.

II. ANALYSIS
This case presents a question of insurance policy interpretation, which is a question of law, subject to de novo review. See Auto-Owners Ins. Co. v. Pozzi Window Co., 984 So.2d 1241, 1246 (Fla.2008).
In interpreting insurance contracts, this Court follows the generally accepted rules of construction, meaning that "[i]nsurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage." U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So.2d 871, 877 (Fla.2007) (citing Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528, 532 (Fla.2005)). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous." Garcia v. Fed. Ins. Co., 969 So.2d 288, 291(Fla.2007) (quoting Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000)). To find in favor of the insured on this basis, however, the policy must actually be ambiguous. Garcia, 969 So.2d at 291 (citing Taurus Holdings, 913 So.2d at 532). "A provision is not ambiguous simply because it is complex or requires analysis.... `[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms.'" Garcia, 969 So.2d at 291 (citation omitted) (quoting Taurus Holdings, 913 So.2d at 532).
Here, the policy language at issue is, "oral or written publication of material that violates a person's right of privacy." Three terms"publication," "material," and "right of privacy"are particularly relevant, and none are defined by the policy. Consequently, the first step towards discerning the plain meaning of the phrase is to "consult references [that are] commonly relied upon to supply the accepted meaning of [the] words." Garcia, 969 So.2d at 292 (citing Gov't Employees Ins. Co. v. Novak, 453 So.2d 1116, 1118 (Fla. 1984)).
The first term, "publication" is defined as "communication (as of news or information) to the public: public announcement" or as "the act or process of issuing copies *1006 (as a book, photograph, or musical score) for general distribution to the public." Webster's Third New International Dictionary 1836 (1981). The definition also refers the reader to the definition of "publish." Id. To publish is "to place before the public (as through a mass medium): DISSEMINATE." Id. at 1837. Here, sending 24,000 unsolicited blast-facsimile advertisements to Mr. Penzer and others is included in the broad definition of "publication" because it constitutes a communication of information disseminated to the public and it is "the act or process of issuing copies ... for general distribution to the public."
"Material" has several definitions, two of which are "of, relating to, or consisting of matter," and "something (as data, observations, perceptions, ideas) that may through intellectual operation be synthesized or further elaborated or otherwise reworked into a more finished form or a new form or that may serve as the basis for arriving at fresh interpretations or judgments or conclusions." Id. at 1392. In this case, the faxed paper containing the unwanted advertisement meets the definition of "material" since a faxed advertisement "consist[s] of matter," and "something that may ... be synthesized or further elaborated or ... may serve as the basis for arriving at fresh interpretations or judgments or conclusions."
A "right" is "something to which one has a just claim" or "something that justly accrues or falls to one: something that one may properly claim: one's due." Id. at 1955. This plain meaning of "right" invokes the legal authority one must possess in order to assert a proper claim.
Because the policy provides coverage for a violation of a "right of privacy," which can only arise from the law, it is not necessary to separately discern the plain meaning of "privacy." If "privacy" was not preceded by "right of" then the dictionary definition of "privacy" would be relevant under a plain meaning analysis. Stated another way, the plain meaning of "right of privacy" is the legal claim one may make for privacy, which is to be gleaned from federal or Florida law, rather than defined by a dictionary. In this case, the source of the right of privacy is the TCPA, which provides the privacy right to seclusion. See Valley Forge, 307 Ill.Dec. 653, 860 N.E.2d at 315 ("The receipt of an unsolicited fax advertisement implicates a person's right of privacy insofar as it violates a person's seclusion, and such a violation is one of the injuries that a TCPA fax-ad claim is intended to vindicate."); Hooters, 157 F. App'x at 206 ("[T]he findings accompanying the TCPA legislation illustrate that Congress was expressly concerned about protecting privacy interests."); Park Univ., 442 F.3d at 1249 ("Courts have consistently held the TCPA protects a species of privacy interest in the sense of seclusion. `Looking at how Congress described unsolicited fax advertisements, it is clear that Congress viewed violations of the Act as `private nuisances' and `invasions of privacy' under ordinary, lay meanings of these phrases.'") (quoting Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc., 401 F.3d 876, 881(8th Cir.2005)); Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 639 (4th Cir.2005) ("[T]he harm occasioned by unsolicited faxes involves protection of some sort of `privacy.'"); W. Rim, 269 F.Supp.2d at 847 ("The stated purpose of the TCPA ... is to protect the privacy of individuals from receiving unsolicited faxed advertisements.") (citing Int'l Sci. & Tech. Inst., Inc. v. Inacom Commc'ns, Inc., 106 F.3d 1146, 1150 (4th Cir.1997)).
As stated previously, the policy provision provides coverage for a written publication of material that violates a person's *1007 right of privacy. The facts of the instant case demonstrate that there was a written dissemination of 24,000 facsimiles that violated the TCPA. Comparing the policy's language to [the facts of this case]: there was a written publication [dissemination] of material [of 24,000 facsimiles] that violated a person's right of privacy [that violated the TCPA]. Therefore, applying our plain meaning analysis, we hold that Transportation's insurance policy provides coverage for sending unsolicited fax advertisements in violation of the TCPA.
Transportation argues that the doctrine of the last antecedent, a grammar-based canon of statutory construction, should apply. According to the doctrine of the last antecedent,
"relative and qualifying words, phrases and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to, or including, others more remote." City of St. Petersburg v. Nasworthy, 751 So.2d 772, 774 (Fla. 1st DCA 2000). The last antecedent is the "last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence." 2A Norman J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 47.33 (7th ed.2007).
Kasischke v. State, 991 So.2d 803, 811 (Fla. 2008). Therefore, Transportation contends that the phrase "that violates a person's right of privacy," as written in the policy provision, modifies the term "material," as opposed to "publication," and thus can only apply when the content of the material violates a person's right of privacy. Accordingly, Transportation urges, only a violation of the secrecy right of privacy will trigger coverage, not a violation of seclusion. We disagree.
First, the doctrine of the last antecedent is not an absolute rule. See United States v. Hayes, ___ U.S. ___, ___, 129 S.Ct. 1079, 1086, 172 L.Ed.2d 816 (2009) ("The rule of the last antecedent... `is not an absolute and can assuredly be overcome by other indicia of meaning.' ") (quoting Barnhart v. Thomas, 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)); Fortune Ins. Co. v. Dep't. of Ins., 664 So.2d 312, 316 (Fla. 1st DCA 1995) ("This rule of statutory construction ... is not controlling or inflexible.") (quoting 73 Am.Jur.2d, Statutes § 230 (1995)). And the doctrine cannot be applied in a way that ignores the plain reading of the language. "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." Fortune Ins., 664 So.2d at 316 (quoting Porto Rico Ry., Light & Power Co. v. Mor, 253 U.S. 345, 348, 40 S.Ct. 516, 64 L.Ed. 944 (1920)). Here, as in Fortune Insurance, we find that the clause "that violates a person's right of privacy" is applicable as much to "publication" as to "material;" therefore, the clause should be read as applicable to all. Accordingly, we reject Transportation's assertion that the violation must arise from the content of the material in order to trigger coverage.
Furthermore, even if the phrase "that violates a person's right of privacy" only modifies the term "material," it does not follow that only the secrecy right to privacy is implicated because "material" could also invade one's seclusion. See Motorists Mut. Ins. Co. v. Dandy-Jim, Inc., 182 Ohio App.3d 311, 912 N.E.2d 659, 666 (2009) ("`The Act presumes that all advertising, so long as it is unsolicited, is an offensive intrusion into the recipient's solitude.' In other words, the unsolicited faxed advertisement itself is the `material' that is offensive and violative of the individual's right of privacy." (quoting TIG Ins. Co. v. *1008 Dallas Basketball, Ltd., 129 S.W.3d 232, 238 (Tex.App.2004))) (citations omitted); see also Terra Nova, 869 N.E.2d at 573 ("On its face, the use of the phrase `right of privacy' does not evince a plain meaning that is limited in the manner in which the insurers contend."); Valley Forge, 307 Ill. Dec. 653, 860 N.E.2d at 316 ("[A] violation of privacy in the sense of a violation of seclusion is implicit in a TCPA fax-ad claim."). Accordingly, we reject Transportation's argument that the doctrine of the last antecedent requires a different plain reading of the policy.[6]

III. CONCLUSION
Based upon our plain meaning analysis, we hold that an advertising injury provision in a commercial liability policy that provides coverage for an "oral or written publication of material that violates a person's right of privacy" provides coverage for blast-faxing in violation of the TCPA. We therefore answer the certified question in the affirmative.
It is so ordered.
QUINCE, C.J., and LEWIS, LABARGA, and PERRY, JJ., concur.
PARIENTE, J., concurs in result only with an opinion, in which CANADY, J., concurs.
CANADY, J., concurs in result only with an opinion.
PARIENTE, J., concurring in result only.
Regardless of whether the insurance policy is read as clearly providing coverage as the majority concludes or whether the policy is ambiguous as Justice Canady concludes, the answer to the certified question is in the affirmative. The reason for that alternative answer based on an ambiguity in the policy language is that this Court construes ambiguous provisions in favor of the insured. Rather than deciding this case on the "plain language" as the majority does, I would acknowledge the existence of two reasonable interpretations but then, in accordance with the rules of construction for insurance policies, apply the interpretation in favor of coverage.
As stated by Justice Canady in his separate opinion in this case, this Court follows the rule that "[a]mbiguous coverage provisions are construed strictly against the insurer that drafted the policy and liberally in favor of the insured." Fayad v. Clarendon Nat'l Ins. Co., 899 So.2d 1082, 1086 (Fla.2005). If there are two competing reasonable interpretations, one favoring coverage for the insured and one denying coverage for the insured, courts uniformly adopt the interpretation conferring coverage. See Container Corp. of Am. v. Md. Cas. Co., 707 So.2d 733, 735-36 (Fla.1998).
The reasoning for this long-established principle is that the insurer, as drafter of the policy language, has an obligation to make the scope of its coverage and any limitations from coverage clear and unambiguous in the actual language of the policy. As we recently stated in United States Fire Insurance Co. v. J.S.U.B., Inc., 979 So.2d 871, 884 (Fla.2007), if the insurer "intended to preclude coverage based on the cause of action asserted, it was incumbent on [the insurer] to include clear language to accomplish this result."
The insurer in this case has contended that the wording of the policy provides coverage for situations where the content *1009 of the material-and not the act of sending itviolates a person's right of privacy. While that is one reasonable interpretation of the policy, it is not the only reasonable interpretation. I agree with the rationale of the Supreme Judicial Court of Massachusetts in interpreting New Jersey law on the same policy provisions defining advertising injury:
Although we are aware that "[a]n insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants," in evaluating the ambiguity of the phrase, we cannot ignore the body of national case law addressing the same or similar policy language and falling on both sides of this interpretive ledger. It is fair to say that even the most sophisticated and informed insurance consumer would be confused as to the boundaries of advertising injury coverage in light of the deep difference of opinion symbolized in these cases.
Terra Nova Ins. Co. v. Fray-Witzer, 449 Mass. 406, 869 N.E.2d 565, 573 (2007) (citation and footnote omitted) (quoting Powell v. Alemaz, Inc., 335 N.J.Super. 33, 760 A.2d 1141, 1147 (Ct.App.Div.2000)). The ambiguity, in my view, arises because the policy language is unclear as to whether the phrase "violates a person's right of privacy" refers to the publication of the material or the material itself.
The bottom line is that if the insurer, as the drafter of the language, intended to limit coverage to material whose content violated the right of privacy, then it could have easily done so by simply adding a phrase as follows: Oral or written publication of material, the content of which violates the right of privacy. Transportation Insurance Company did not do so and thus left the policy open to a reasonable interpretation in favor of coverage. See Terra Nova, 869 N.E.2d at 574 ("[H]ad [the insurers] wished their policies to pertain only to violations of privacy created by the content of material, it was incumbent on them to draft explicit policies to that effect.").
For all of these reasons, I agree with the majority's conclusion that insurance coverage should be extended and agree with answering the certified question in the affirmative.
CANADY, J., concurs.
CANADY, J., concurring in result only.
Although I agree that the certified question should be answered in the affirmative, I do not concur in the majority's conclusion that the policy provisions at issue are unambiguous. Instead, I conclude that the resolution of the question presented by this case is dictated by the rule that "[a]mbiguous coverage provisions are construed strictly against the insurer that drafted the policy and liberally in favor of the insured." Fayad v. Clarendon Nat'l Ins. Co., 899 So.2d 1082, 1086 (Fla.2005).
The clause at issue provides coverage for advertising injuries arising from "[o]ral or written publication of material that violates a person's right of privacy." An ordinary reader of this clause would reasonably be in doubt concerning whether the violations covered by the clause must be based on the informational content of the material that is published or may be based on the physical intrusion of the material.
The existence of two different senses in which the noun "material" is commonly used contributes to the ambiguity. One sense of "material" denotes a physical object: "[t]he matter of which a thing is or may be made." 1 Shorter Oxford English Dictionary 1723 (6th ed.). This sense of the term has nothing to do with informational content. Another sense of "material" *1010 is used to identify "[i]nformation, evidence, ideas, etc., for use in writing a book or script, drawing a conclusion, etc." Id. at 1724. This sense of the term has everything to do with informational content.
The ambiguity is compounded by the existence of two senses in which the noun "publication" is commonly used. "[P]ublication" may denote "[t]he action of making something generally known"a definition which points to informational content. 2 Shorter Oxford English Dictionary 2395 (6th ed.). The term also may denote "[t]he process of producing and issuing ... printed or reproduced matter"a definition which focuses on the physical object disseminated. Id.
When reference is made to a "written publication of material that violates a person's right of privacy," an ordinary reader will notunless sufficient contextual clues are presentunderstand with certainty whether the reference is to a violation caused by the intrusion of the writing as a physical object, by the informational content of the writing, or by either. The relevant context here does not provide an ordinary reader with a sufficient basis for rejecting the reasonable possibility that "written publication of material" denotes the physical object received when a fax transmission is disseminated and that the policy therefore covers privacy violations based on the intrusion of such a physical object. Neither does the context provide adequate grounds for rejecting as unreasonable a reading which limits the meaning of "written publication of material" to information or ideasthat is, to the informational content that is published and causes a privacy violation.
Given the different relevant senses in which "material" and "publication" are commonly used and the lack of a sufficient contextual basis to guide the ordinary reader to an unequivocal meaning of the policy provision, the plain meaning rule does not provide a persuasive basis for deciding the question presented here. Since the reading of the policy advocated by Penzer, the insured, is not a reading that an ordinary reader would reject as unreasonable, Penzer's reading must prevail.
NOTES
[1] We have jurisdiction. See art. V, § 3(b)(6), Fla. Const.
[2] The TCPA is a federal statute that provides, in relevant part, that it is "unlawful for any person ... to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C) (2001). Each violation of the TCPA is subject to a private right of action by the recipient who may recover his actual monetary losses or $500.00 in damages, whichever is greater. Id. § 227(b)(3).
[3] Although Transportation initially claimed that it had no duty to defend or indemnify Southeast Wireless, the duty to defend is not at issue because Southeast Wireless entered into a settlement agreement with the class and the class released Southeast Wireless from all liability. Id. at 1281.
[4] Certain exclusions are also detailed in the liability policy, namely:

"Advertising Injury" arising out of:
(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;
(2) The failure of goods, products and services to conform with the advertised quality or performance;
(3) The wrong description of the price of goods, products or services; or
(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.
The Eleventh Circuit stated that none of the policy exclusions prevent coverage, concluding that Transportation "has not met its burden to prove that coverage is inapplicable under any of the policy exclusions or other defenses." Penzer, 545 F.3d at 1310. Because there are no issues relating to the exclusions presented to this Court, we make no comment regarding the merits of that issue.
[5] This and similar language has been widely litigated, and courts applying diverse reasoning have come down on both sides of the ledger. For example, cases holding that similar policy provisions provide coverage for TCPA violations include: Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa., 442 F.3d 1239 (10th Cir.2006) (finding coverage applying a plain meaning analysis); Hooters, 157 F. App'x 201 (11th Cir.2005) (finding coverage based upon Georgia law that required adopting interpretation that favored greater coverage); W. Rim Inv. Advisors, Inc. v. Gulf Ins. Co., 269 F.Supp.2d 836, 847 (N.D.Tex.2003) (finding entitlement to coverage based upon the stated purpose of the TCPA"to protect the privacy of individuals from receiving unsolicited faxed advertisements"); Prime TV, LLC v. Travelers Ins. Co., 223 F.Supp.2d 744 (M.D.N.C.2002) (finding coverage based upon plain meaning analysis); Terra Nova Ins. Co. v. Fray-Witzer, 449 Mass. 406, 869 N.E.2d 565, 573-74 (2007) (holding "right of privacy" ambiguous, but finding coverage based on New Jersey law that required that ambiguities "be liberally construed in favor of the insured"); Valley Forge Ins. Co. v. Swiderski Elecs., Inc., 223 Ill.2d 352, 307 Ill.Dec. 653, 860 N.E.2d 307 (2006) (finding coverage based on plain meaning of the policy's terms).

Examples of cases holding that similar policy provisions do not provide coverage include: Am. States Ins. Co. v. Capital Assocs. of Jackson County, Inc., 392 F.3d 939, 941 (7th Cir.2004) (finding no coverage in part because named plaintiff in class action was a corporation "and businesses lack interests in seclusion," and because it interpreted the policy as only covering a violation of the secrecy type of privacy), but see Valley Forge, 223 Ill.2d 352, 307 Ill.Dec. 653, 860 N.E.2d 307 (declining to follow American States as it applied to Illinois law); Erie Ins. Exch. v. Kevin T. Watts, Inc., No. 1:05-CV-00867-JDTTAB, 2006 WL 3776255, *6 (S.D.Ind. Dec. 19, 2006) (finding no coverage in part because named plaintiff in class action was a corporation, "lacking the necessary legal interests to pursue an invasion of privacy claim"); Ace Rent-A-Car, Inc. v. Empire Fire & Marine Ins. Co., 580 F.Supp.2d 678, 688 (N.D.Ill.2008) (relying on American States and Indiana law to find that "TCPA violations implicate a different privacy interest than that covered by the advertising injury provisions of the policy"); Auto-Owners Ins. Co. v. Websolv Computing, Inc., 580 F.3d 543 (7th Cir.2009) (following its earlier decision in American States, despite Valley Forge, concluding that Iowa would be more likely than Illinois to adopt the Seventh Circuit's interpretation of the policy).
As explained more fully in our opinion, we are more persuaded by the reasoning in those cases that found coverage by applying a plain meaning analysis.
[6] Because we apply a plain meaning analysis, we need not consult the rules of construction that apply when there is an ambiguity. Therefore, we reject Transportation's rule of construction arguments, including the doctrine of noscitur a sociis.