[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15862
Non-Argument Calendar
_____

D.C. Docket No. 8:12-cv-01922-VMC-TBM


SOUTHERN-OWNERS INSURANCE COMPANY,
a Michigan corporation,

                                        Plaintiff–Counter Defendant–Appellant,

versus

WALL 2 WALLS CONSTRUCTION, LLC,
a Florida corporation,

                                        Defendant–Counter Claimant–Appellee,

KEITH GALLOWAY, et al.,

                                        Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 13, 2014)

Before ED CARNES, Chief Judge, JORDAN, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Southern-Owners Insurance Company appeals a judgment that it is liable to Wall 2 Walls Construction, LLC on a $1 million insurance policy.

## I.

This case arises out of a May 2010 car accident. While on company business, Wall 2 Walls employee Keith Galloway struck Yarbra Gibbs' car and injured her. Galloway was driving a pickup truck owned by Clyde Walls, the eponymous owner of Wall 2 Walls. At the time of the accident, Wall 2 Walls had two insurance policies covering the pickup truck. The first was a $100,000 commercial automobile insurance policy through Progressive Express Insurance Company. That policy covered bodily injury liability of up to $100,000 per person and property damage liability of up to $50,000 per incident. It also covered additional risks including uninsured motorists and collision damage. The policy covered three vehicles, one of which was the truck Galloway was driving.

The second policy was a commercial general liability (CGL) policy issued by Southern-Owners. Although Southern-Owners' CGL policies generally excluded automobile-related claims, Wall 2 Walls' policy contained a $1 million endorsement for "Hired Auto and Non-Owned Auto Liability," which Wall 2 Walls had purchased for an additional premium. The endorsement read as follows:

2

**2. HIRED AUTO AND NON-OWNED AUTO LIABILITY**

Coverage for "bodily injury" and "property damage" liability provided under SECTION I COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, is extended as follows under this item, but <u>only if you do not have any other insurance available to you which affords the same or similar coverage.</u>

**COVERAGE**

We will pay those sums the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of the maintenance or use of an "auto":

    a.     You do not own;

    b.     Which is not registered in your name; or

    c.     Which is not leased or rented to you for more than ninety consecutive days

and which is used in your business.

(Emphasis added.)

The two insurance companies reacted to the accident in different ways. Progressive quickly determined that its policy did cover Gibbs' injury. Less than a month after the accident, it entered into an agreement with Gibbs in which Progressive gave her $100,000 (the policy's full limit per person for bodily injury) and Gibbs released any claim she had arising from the accident. The release did not, however, preclude her from filing suit to recover for losses that other insurance policies might cover. In contrast, Southern-Owners denied Wall 2 Walls' request for coverage under the CGL policy's "Hired Auto and Non-Owned

3

Auto Liability" endorsement. It justified its decision on the ground that the pickup truck was not a "hired auto" under the endorsement because "the vehicle is registered to and/or owned by an insured, Clyde J. Walls, as owner of Wall 2 Walls Construction."

In July 2012 Gibbs filed suit in state court against Galloway, Wall 2 Walls, and Clyde Walls. Southern-Owners then filed a complaint in federal district court seeking a declaratory judgment that (1) Southern-Owners' policy did not cover the accident and (2) Southern-Owners therefore had no duty to defend or indemnify Wall 2 Walls. Southern Owners did not rely on the rationale it gave when it denied Wall 2 Walls' request for coverage. Instead, it relied on the exclusionary clause in the endorsement. That clause stated that the endorsement applied "only if [Wall 2 Walls did] not have any other insurance available to [it] which affor[ded] the same or similar coverage." In Southern Owners' view, the Progressive policy provided "the same or similar coverage," and therefore the endorsement did not apply. Wall 2 Walls counterclaimed, alleging breach of Southern-Owners' duty to defend and indemnify. On cross-motions for summary judgment, the district court ruled that the policy language was ambiguous and therefore Florida law mandated granting summary judgment to Wall 2 Walls.

4

## II.

We review de novo a district court's grant of summary judgment.  Nat'l Fire Ins. Co. v. Fortune Constr. Co., 320 F.3d 1260, 1267 (11th Cir. 2003).  We also review de novo a district court's interpretation of contract language.  Id.

Florida substantive law governs in this diversity case.  See Tech Coating Apps., Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998).  It requires us to construe insurance contracts "in accordance with the plain language of the policies as bargained for by the parties."  Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000).  "If a policy provision is clear and unambiguous, it should be enforced according to its terms."  Penzer v. Transp. Ins. Co., 29 So. 3d 1000, 1005 (Fla. 2010) (quotation marks and alteration omitted); see also Siegle v. Progressive Consumers Ins. Co., 819 So. 2d 732, 736  (Fla. 2002) (admonishing courts to read insurance contract terms "in their ordinary sense").

But "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and . . . another limiting coverage, the insurance policy is considered ambiguous."  Anderson, 756 So. 2d at 34.  Any ambiguous passage is to be "interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy."  Id.; see also Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n, 117 F.3d 1328, 1337 (11th Cir. 1997) (noting that Florida law requires construing ambiguities in a

5

contract against the contract's drafter); Penzer, 29 So. 3d at 1005 (ambiguity to be "construed against the insurer and in favor of coverage") (quotation mark omitted). And exclusionary clauses "are construed even more strictly against the insurer than coverage clauses." Anderson, 756 So. 2d at 34.

Thus if Wall 2 Walls advances a reasonable interpretation of the policy language favoring coverage, we must affirm. See Penzer, 29 So. 3d at 1005; Anderson, 756 So. 2d at 34. It contends that the exclusionary clause can be reasonably read so that the Progressive policy's coverage is neither the "same" as nor "similar" to the CGL policy's coverage because insurance that "affords the same or similar coverage" would have to be a policy with a non-owned-auto liability endorsement. Southern-Owners obviously disagrees, arguing that the policies' coverages are "the same or similar."

The parties have not pointed to any binding authority interpreting this clause and we have found none, so we must interpret the clause ourselves. Because the Progressive policy is plainly "other insurance," the question turns on the phrase "the same or similar coverage," which is not defined in the policy. When a policy does not define relevant terms, our "first step towards discerning the plain meaning of the phrase is to consult references that are commonly relied upon to supply the accepted meaning of the words." Penzer, 29 So. 3d at 1005 (quotation marks and alterations omitted). In insurance, "coverage" means "the risks within the scope of

6

an insurance policy." Black's Law Dictionary 394 (8th ed. 2004). So the question is whether the risks within the scope of the two policies are "the same" or "similar."

We begin with whether they are "the same." "Same" means "not different" or "exactly like someone or something else."[1] The Progressive policy insured and paid on bodily injury liability arising from the use of an automobile. It additionally covered property damage liability arising from the use of an automobile. Those are the same types of risks that the Southern-Owners endorsement covers. But the Progressive policy is tied to three specific vehicles, while the Southern-Owners endorsement covers any "auto" not owned by, leased or rented for more than ninety consecutive days by, or registered to Wall 2 Walls — a universe that potentially includes far more than the three vehicles covered by the Progressive policy. The Southern-Owners endorsement thus covers risks to a significantly broader class of vehicles than the Progressive policy covers. Even though in this case the Progressive policy covered the vehicle at issue, it would not have covered, for example, injuries resulting from an accident in which Galloway was driving his own vehicle or a rental vehicle that was not rented for more than ninety days. The

---

[1] Merriam-Webster's Collegiate Dictionary (11th ed. 2003), available at www.merriam-webster.com/dictionary/same (last visited Oct. 16, 2014).

coverage provided by the Progressive policy was therefore not "the same" as that afforded by the Southern-Owners endorsement.

We next turn to whether the risks within the scope of the insurance policies were "similar." "Similar" is variously defined as "almost the same as someone or something else,"[2] "alike in substance or essentials: corresponding,"[3] "having characteristics in common: strictly comparable,"[4] or "having a likeness or resemblance, esp[ecially] in a general way."[5] These definitions encompass varying degrees of likeness. And depending on the degree of likeness required to make things "similar," there are arguments both for and against the view that the Southern-Owners endorsement's broad-scope coverage is "similar" to the Progressive policy's coverage of the same types of risks across a far narrower scope. For example, it would be reasonable to argue that the two policies' coverages "hav[e] a likeness or resemblance, esp[ecially] in a general way" to one another, in that they both cover bodily injury and property damage. But it would also be reasonable to argue that the Progressive policy's coverage of those risks across a scope of three vehicles is not "almost the same" as the much broader

---

[2] Merriam-Webster's Collegiate Dictionary (11th ed. 2003), available at www.merriam-webster.com/dictionary/similar (last visited Oct. 16, 2014).

[3] Id.

[4] Id.

[5] Random House Webster's Unabridged Dictionary 1783 (2d ed. 2001).

8

coverage of the Southern-Owners endorsement.  Florida law is clear that where reasonable interpretations compete, the insured wins.  See Anderson, 756 So. 2d at 34.  This conclusion is in line with Florida's directive to "interpret[ the policy language] liberally in favor of the insured and strictly against the drafter who prepared the policy."  Id.

**AFFIRMED**.