ALTENBERND, Judge,
Concurring in part and dissenting in part.
Although I reluctantly agree that Maricela Cespedes is not entitled to summary judgment due to the plain language in the endorsement identified as “FP CGCC (03/08),” which is quoted in bold type in the court’s opinion, I do not believe that this endorsement entitles Florida Peninsula to summary judgment at this stage of the proceedings. The statutory language in this endorsement is intended to be an obvious warning provided to the insured about the contents of the insurance contract, not an endorsement buried deep inside the contract. Thus, while I agree that the policy does contain a legally unambiguous exclusion for sinkhole damage, in the absence of a warning on the face of the policy, it is not clear to me that the exclusion is enforceable.
Without stating the facts in detail, it is fair to say that Ms. Cespedes and Florida Peninsula’s field agent both thought this policy provided sinkhole coverage from the point when she first reported her suspicions that her home had sustained sinkhole damage in June 2009 through the time when the licensed professional engineer retained by Florida Peninsula confirmed her suspicions in 2010.[1] Apparently, it *586 was only when a more highly trained case manager reviewed the file that the insurance company realized that the policy contained an exclusion. Thus, the initial inquiry in this case might be to determine why both Ms. Cespedes and the trained field adjuster were unable to determine that the policy “unambiguously excluded sinkhole damage.” Five circumstances appear to explain their confusion.
First, neither the transmittal letter with the policy nor the beginning sections of the insurance policy contains a warning that this exclusion exists. Section 627.706(4), Florida Statutes (2008), required insurers offering policies that exclude coverage for sinkhole damage to “inform policyholders in bold type” of that exclusion. The majority’s opinion quotes the statutory warning and relies on it as the primary source of the clear and unambiguous exclusion of coverage. But, as I read the statute in the context of the insurance code, the warning is not intended to be an endorsement added to the end of the policy. It is not supposed to be a part of the contract at all; it is supposed to be a bold front-end warning informing the insured about the exclusion that is somewhere within the contract.
In this case, the declarations page lists “Forms and Endorsements.” In that list is “FP CGCC (03/08).” This is the warning given to the insured. By contrast, the declarations page has two issues disclosed in bold type. Section 627.7011(4), Florida Statutes (2008), required a policy to “include” a statement in bold type concerning “law and ordinance coverage.” Florida Peninsula dutifully placed that warning on the declarations page. Likewise, section 627.701(4)(a), Florida Statutes, required a bold warning on the “face” of the policy that the policy contained a separate deductible for hurricane losses. Florida Peninsula placed that warning on page two of the declarations. But Florida Peninsula did nothing similar for the sinkhole exclusion. These circumstances do not make the policy legally ambiguous. I am not certain what, if any, remedy is available to Ms. Cespedes if Florida Peninsula failed to comply with section 627.706(4), Florida Statutes. This is the issue I would leave open for consideration on remand.
The remaining four factors probably confused Ms. Cespedes and the insurance company’s field agent, but they are not matters that will entitle her to any relief on remand. Nevertheless, they warrant comment. The second factor is the policy’s four-page “Homeowners Declaration.” As explained above, it reveals the added exclusion only in the cryptic code listed in the “Forms and Endorsements.” Because sinkhole coverage is already included within the body of the main policy, which is identified as “HO 00 03 04 91,” this is not an added coverage option; it is merely an exclusion. Thus, there is no place on the declarations page to list an amount of coverage or the price charged for “sinkhole coverage.” Coverages that may be included within a policy usually are stated on the declarations page with either a statement of the price charged, the premium, or with the word “included” or “excluded.” Without that option or a statement that the premium has been reduced in light of an *587 added exclusion, nothing on the declarations page directly informs the insured of this exclusion.
Third, the original HO-3 insurance policy that was commonly issued in the 1970s was a relatively short and readable contract that could be comprehended by a high school graduate. It has evolved in this case into a seventeen-page form identified as “HO 00 03 04 91.” Because that form is intended for use in many states, it does not align with Florida law or the underwriting desires of Florida insurers. As a result, the seventeen-page form is followed by a fourteen-page “Special Provisions — Florida” endorsement, identified as “FP 23 04 08,” that adds and deletes contract language from the national form. In my opinion, while not legally ambiguous, it has become structurally ambiguous and exceedingly difficult for Florida’s homeowners to read and understand. Except in the eyes of trained lawyers and insurance agents, there is nothing plain and unambiguous about the standard homeowner’s insurance policy. But under the applicable Florida law, the homeowner is not treated differently than a large corporation with a lawyer in charge of risk management; the fact that the policy is “complex or requires analysis” does not render the policy ambiguous. Penzer v. Transp. Ins. Co., 29 So.3d 1000, 1005 (Fla.2010) (rule stated as to commercial coverage); Garcia v. Fed. Ins. Co. 969 So.2d 288, 290-91 (Fla.2007) (rule stated as to homeowner’s coverage).
Fourth, and perhaps most telling, there is a mistake in the “checklist of coverage” that was provided with this policy. The checklist was inserted immediately after the declarations page and before the main sections of the policy. In the checklist, the box next to “sinkhole” coverage contains a “Y,” which is the letter for “yes, you have this coverage.” A reasonable person might think that a mistake or misrepresentation of coverage in such a checklist would create an ambiguity within the policy. But the legislature does not agree.
To address the problem of modern insurance policies that are too complex for average Floridians to understand, the legislature requires insurance companies to give the homeowner an “outline of coverage” either with the policy or before it arrives. See § 627.4143, Fla. Stat. (2008). Florida Peninsula’s “checklist of coverage” is its compliance with this statute. But subsection 627.4143(5) requires the insurer to tell the homeowner that the checklist is for “informational purposes only.” The checklist cannot change the provisions of the contract. Id. Subsection 627.4143(6) even attempts to create a rule of evidence prohibiting the admission of the checklist into evidence in a civil case. Thus, this serious mistake in the outline of coverage provides no avenue of redress for Ms. Cés-pedes.
Fifth, as the court’s opinion explains, the “Special Provisions — Florida” endorsement contains both a sinkhole exclusion and a “Neutral Evaluation Program” section. In other words, Florida Peninsula has included the procedures for addressing a sinkhole claim in its standard form, while also excluding sinkhole coverage in that form. By including the sinkhole procedures in a standard form that never covers sinkholes, Florida Peninsula may not have created an ambiguity for a trained attorney, but I understand why the trial court concluded that it created an ambiguity for the homeowner. The supreme court has stated: “However, in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.” Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000) (citing Excelsior Ins. Co. v. Pomona Park Bar & Package *588 Store, 369 So.2d 938, 941 (Fla.1979)). In this instance, the neutral evaluation portion of the policy cannot be given effect because there are no covered claims to which it can apply. This useless portion of the policy under the case law does not seem to create an ambiguity. Thus, I agree with the majority on this point because the law compels me to do so.

. To the extent that Judge Villanti’s concurrence suggests that no remand is necessary to *586 make factual determinations in this case because Ms. Cespedes knew her 2009 policy did not include coverage for sinkhole loss and that she had not elected to pay for that coverage, I believe he may read too much into the deposition. She testified that she asked for “anything that covers my house.” The declarations page simply has no information from which an insured can determine whether a premium has been charged for this coverage. Ms. Cespedes testified that her agent thought she had sinkhole coverage when she reported the claim in June 2009. She knew that she had no coverage in the policy issued after the claim in 2010.