DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DENIS M. FIELD,**
Appellant,

v.

**CERTAIN UNDERWRITERS AT LLOYD'S** subscribing to shares of policies described below, to wit: Syndicates BRT 2987, WEL 2020, WEL 3030, FRW 190, MKL 3000, HIS 33, KLN 510; **GULF INSURANCE COMPANY OF UK LIMITED; LIBERTY MUTUAL INSURANCE COMPANY (U.K.) LIMITED,** n/k/a, **LIBERTY MUTUAL INSURANCE EUROPE LIMITED; QBE INTERNATIONAL INSURANCE LIMITED; LEXINGTON INSURANCE COMPANY PER RISK SPECIALISTS COMPANY OF NEW YORK; ASSCURAZAIONI GERALIS.P.A.; GE SPECIALTY INSURANCE (UK) LIMITED; ILLINOIS UNION INSURANCE COMPANY; PHILADELPHIA INSURANCE COMPANY; MULTINATIONAL ACCOUNTANS INDEMNITY LIMITED; BDO USA, LLP** (a Delaware LLP); **BDO SEIDMAN, LLP** (a Delaware LLP); **BDO SEIDMAN, LLP** (a New York LLP), collectively **"BDO"; SPACKLER INSURANCE COMPANY, INC.;** and **CERTAIN UNDERWRIERS AT LLOYD'S,** subscribing to shares of the policies described below, to wit: **SWISS RE INTERNATIONAL SE; LLOYD'S SYNDICATE NO. 1274 AUL AND ANTARES SYNDICATE 1274; COLUMBIA CASUALTY COMPANY; LLOYD'S SYNDICATE NAV 1221; COLUMBIA CASUALTY COMPANY; INTERSTATE FIRE AND CASAULTY COMPANY; IRONSHORE SPECIALTY INSURANCE COMPANY; QBE SPECIALTY INSURANCE COMPANY; SCOTTSDALE INSURANCE COMPANY; STARR SURPLUS LINES INSURANCE COMPANY; LLOYD'S SYNDICATE NAV 1221; INTERSTATE FIRE AND CASUALTY COMPANY; IRONSHORE SPECIALTY INSURANCE COMPANY; STARR SURPLUS LINES INSURANCE COMPANY,**
Appellees.

No. 4D19-2429

[September 16, 2020]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Cymonie S. Rowe, Judge; L.T. Case No. 502017CA010333XXXXMBAI.

Kevin F. Richardson of Clyatt & Richardson, P.A., West Palm Beach and James D. Wing, Mount Dora, for appellant.

Robert E. McLaughlin, Jennifer W. Wolak and Samantha Lemery Rowles of Fields Howell LLP, Atlanta, GA, and Scott J. Link and Kara Rockenbach Link of Link & Rockenbach, PA, West Palm Beach, for appellees.

Anthony N. Upshaw, Melissa R. Alvarez and Audrey Pumariega of McDermott Will & Emery LLP, Miami, and Timothy E. Hoeffner and Jason Gerstein of McDermott Will & Emery LLP, New York, NY, for appellee Spackler Insurance Company, Inc.

WARNER, J.

Appellant challenges a final summary judgment in favor of appellees, the 2017-18 Underwriter Insurers, in his suit to recover defense costs he incurred in a criminal trial in which he was acquitted. In a thorough and well-reasoned opinion, the trial court determined that the costs for which he sought reimbursement were not made in connection with a "claim," as defined in the policy, during the policy term. We affirm the trial court's decision.

Appellant was a partner and the CEO of a global accounting firm, BDO Seidman, LLP., until his resignation from the firm in 2003. During the years 2000 through late 2003, BDO, appellant, and others came under government investigation for tax services that the IRS considered to be abusive tax shelters. In 2009, appellant and others were criminally charged in connection with the tax services that they provided. Appellant was eventually acquitted of all charges in 2013.

During the years 2000-2017, BDO and its partners were insured under "towers" of Lloyd's of London primary and excess insurance policies.[1] Each policy was written for a single year of coverage. In May of 2003, BDO sent to Lloyd's representative a notice of circumstance. The notice arose out of the tax shelter services which BDO had provided to its high value tax clients. The IRS considered those shelters to be abusive tax shelters, and they were under IRS examination. The notification triggered coverage for the policy year 2002-2003. By the time of appellant's criminal charges, the 2002-03 underwriters had paid out their limits under the policy.

In 2017, appellant made a claim to the appellees, the 2017-2018 Underwriter Insurers, seeking indemnification for defense costs incurred in the 2009-2013 criminal proceedings, which claim was denied. Appellant then filed suit against the appellees, adding these claims to others pending against other insurers. In his complaint, appellant claimed coverage for his defense costs under the 2017-18 policy.

---

[1] The policies covered both current and former partners as individual assureds.

2

Appellees moved for summary judgment on the complaint, attaching the policy. Among their several arguments, they contended that no claim, as defined in the policy was made during the policy period. Appellant challenged their interpretation, but the trial court held that the plain language of the policy did not allow for the recovery of appellant's defense costs for his criminal prosecution which ended over four years earlier. The trial court granted judgment in favor of the insurer, prompting this appeal.

We review a final summary judgment de novo. *Frost v. Regions Bank*, 15 So. 3d 905, 906 (Fla. 4th DCA 2009). Appellate review of the interpretation of an insurance policy is a question of law and also subject to de novo review. *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010).

"Insurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007) (citing *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). When the language of an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning in order to give effect to the policy as written. *Washington Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013). "Insurance contracts are to be reviewed as a whole, viewing all words in context." *Walker v. State Farm Fire & Cas. Co.*, 758 So. 2d 1161, 1162 (Fla. 4th DCA 2000). "When construing an insurance policy to determine coverage the pertinent provisions should be read *in pari materia*." *Nationwide Mutual Fire Ins. Co. v. Olah*, 662 So. 2d 980, 982 (Fla. 2d DCA 1995).

The important provisions of the appellee's policy for consideration of appellant's claims include the operative clause and the definitions of "claim" and "defense costs." The "Operative Clause" of the Policy provides:

> Subject to all other provisions of this Policy, the Insurer will indemnify the Assured against:
>
> (1) Loss arising from a Claim first made against the Assured during the Policy Period;
>
> (2) Defense Costs;
>
> (3) Regulatory Loss;
>
> (4) Regulatory Defense Costs.

A "Claim" in the Policy is defined as: "a written demand for monetary or non-monetary relief, which may include a civil legal proceeding or binding arbitration

proceeding, made against the Assured by reason of a Wrongful Act[.]"[2] "Defense costs" are defined as follows:

(a) costs, charges and expenses incurred by the Assured in the defense of a Claim;

(b) the cost of an appeal bond or similar bond required in connection with the contest of a Claim, and the cost of any security required in relation to the bond;

(c) costs, charges and expenses reasonably incurred in defense or settlement of circumstances arising out of conduct of Professional Business that might give rise to a Claim for which cover may be provided by this Policy and are notified to and accepted as such by the Insurer under Condition (1)[.]

The first page of "Risk Details" before the Operative Clause, states: "THIS IS A CLAIMS MADE POLICY WHICH APPLIES ONLY TO CLAIMS FIRST MADE DURING THE POLICY PERIOD." The Policy Period is stated to be June 1, 2017 to June 1, 2018.

As the trial court concluded, the policy requires a claim to be a written demand for monetary relief *against the Assured* as a result of a wrongful act. The wrongful act in this case constituted the professional advice given by appellant with respect to the tax shelter services, which was the origin of the criminal prosecution. The operative clause allows indemnification under the policy for losses from *claims,* and defense costs. The definition of defense costs plainly requires those costs to be incurred with respect to a claim.

For the purposes of the motion, the trial court accepted appellant's contention that the criminal prosecution could constitute a claim for non-monetary relief. But that "claim" was not made within the policy period of 2017-18. The criminal prosecution was commenced in 2009. Only the request for defense costs was made during the policy period, which had to be the result of a claim. Thus, if the claim was not made within the policy period, then there could be no indemnification of defense costs which had to be associated with a claim. We agree with the trial court's interpretation of the contract.

Appellant points to the definition of "Policy Claim" in the contract and contends that the reimbursement of defense costs for his criminal prosecution is an independent claim, not governed by the definition of "defense costs" in the policy. A "Policy Claim" is defined as "a claim by the Assured to be indemnified

---

[2] "Wrongful Act" is defined as "any negligent act, error or omission, breach of duty....committed or alleged to be committed at any time in the conduct of Professional Business."

4

by the Insurer under this Policy." Appellant claims his defense costs therefore are a first-party claim and not a third-party claim, as in the "claim" definition. Since he requested indemnification of the cost of his prosecution during this policy period, the policy should provide coverage. He contends that the trial court and the appellees erred in reading into the definition of a "Claim" and a "Policy Claim" that they must be made during the policy period since neither definition mentions this time restriction.

We disagree with appellant's interpretation of "Policy Claim." That term is used in the "Conditions" section of the policy. In those provisions, notice to the appellees is a condition of the policy. That provision states, "For the purposes of this Policy, the date on which such Claim . . . is made against the Assured during the Policy period is the date upon which the resulting Policy Claim shall attach to this policy." Thus, it is plain from the policy that the Policy Claim is derivative of the Claim made during the policy period. It is not an independent claim. And because the Claim giving rise to the claim of indemnification was not made during the policy period, there was no Policy Claim for indemnification on this policy.

Appellant also commences his brief with a suggestion that we rely on English law in construing the policy. Not only is this improperly raised for the first time on appeal, the policy itself shows New York as the choice of law for interpretation of the policy. No argument as to choice of law was advanced in the trial court. This argument therefore is meritless.

For the foregoing reasons, we affirm the judgment determining that the insurers' policy does not provide coverage for the appellant's defense costs.

*Affirmed.*

MAY, J., and HILAL, JENNIFER, Associate Judge, concur.

*       *       *

**_Not final until disposition of timely filed motion for rehearing._**